## GIBSON *v.* MISSISSIPPI.

ERROR TO THE SUPREME COURT OF THE STATE OF MISSISSIPPI.

No. 711. Argued and submitted December 18, 1895. — Decided April 13, 1896.

The principle reaffirmed that while a State, consistently with the purposes for which the Fourteenth Amendment was adopted, may confine the se- lection of jurors to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications, and while a mixed jury in a particular case is not, within the meaning of the Consti- tution, always or absolutely necessary to the enjoyment of the equal protection of the laws, and therefore an accused, being of the colored race, cannot claim as matter of right that his race shall be represented on the jury; yet a denial to citizens of the African race, *because of their color,* of the right or privilege accorded to white citizens of participat- ing as jurors in the administration of justice would be a discrimination against the former inconsistent with the amendment and within the power of Congress, by appropriate legislation, to prevent.

Section 641 of the Revised Statutes, providing for the removal of civil suits or criminal prosecutions from the state courts into the Circuit Courts of the United States, does not embrace a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of exe- cuting the sentence. For such denials arising from judicial action after a trial commenced, the remedy lies in the revisory power of the higher courts of the State, and ultimately in the power of review which this

court may exercise over their judgments whenever rights, privileges or immunities claimed under the Constitution or laws of the United States are withheld or violated. The denial or inability to enforce in the judicial tribunals of the States rights secured by any law providing for the equal civil rights of citizens of the United States, to which section 641 refers, and on account of which a criminal prosecution may be removed from a state court, is primarily, if not exclusively, a denial of such rights or an inability to enforce them resulting from the constitution or laws of the State, rather than a denial first made manifest at or during the trial of the case.

The fact that citizens of the African race had been excluded, because of their race, from service on previous grand juries as well as from the grand jury which returned the particular indictment in the case on trial, will not authorize a removal of the prosecution under section 641 of the Revised Statutes, but is competent evidence only on a motion to quash the indictment.

It is not every denial by a state enactment of rights secured by the Constitution or laws of the United States that is embraced by section 641 of the Revised Statutes. The right of removal given by that section exists only in the special cases mentioned in it.

The requirement of the Mississippi constitution of 1890 that no person should be a grand or petit juror unless he was a qualified elector and able to read and write did not prevent the legislature from providing, as was done in the Code of 1892, that persons selected for jury service should possess good intelligence, sound judgment and fair character. Such regulations are always within the power of a legislature to establish unless forbidden by the constitution. They tend to secure the proper administration of justice and are in the interest, equally, of the public and of persons accused of crime.

The Mississippi Code of 1892, in force when the indictment was found, did not affect in any degree the substantial rights of those who had committed crime prior to its going into effect. It did not make criminal and punishable any act that was innocent when committed, nor aggravate any crime previously committed, nor inflict a greater punishment than the law annexed to such crime at the time of its commission, nor alter the legal rules of evidence in order to convict the offender.

The inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed. The mode of trial is always under legislative control, subject only to the condition that the legislature may not, under the guise of establishing modes of procedure and prescribing remedies, violate the accepted principles that protect an accused person against *ex post facto* enactments.

The conduct of a criminal trial in a state court cannot be reviewed by this court unless the trial is had under some statute repugnant to the Constitution of the United States, or was so conducted as to deprive the accused of some right or immunity secured to him by that instrument.

Mere error in administering the criminal law of a State or in the conduct of a criminal trial — no Federal right being invaded or denied — is beyond the revisory power of this court under the statutes regulating its jurisdiction. Indeed, it would not be competent for Congress to confer such power upon this or any other court of the United States.

The Constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the General Government, or by the States, against any citizen because of his race. All citizens are equal before the law. The guarantees of life, liberty and property are for all persons, within the jurisdiction of the United States, or of any State, without discrimination against any because of their race. Those guarantees, when their violation is properly presented in the regular course of proceedings, must be enforced in the courts, both of the Nation and of the State, without reference to considerations based upon race. In the administration of criminal justice no rule can be applied to one class which is not applicable to all other classes.

THE plaintiff in error was indicted in the Circuit Court of Washington county, Mississippi, for the crime of having, in that county and on the 12th day of December, 1892, killed and murdered one Stinson.

When the case was called for trial the accused presented a petition for its removal to the Circuit Court of the United States for the western division of the Southern District of Mississippi. The petition was verified by the oath of the accused to the effect that the facts set forth in it were true and correct to the best of his knowledge and belief, and was as follows:

" This petition respectfully shows unto this court that John Gibson, a citizen of said State and of the United States of America, is a negro of the African descent and color black. That under the constitution of the State of Mississippi, which was adopted in the constitutional convention in November, 1890, it prescribes that the qualification for persons to serve as jurors in said State shall be that the ability of said citizens, qualified electors of the county and State, male, being citizens thereof, not having [been] convicted of specified crimes, shall be able to read and write; but the legislature shall provide by law for procuring a list of persons so qualified to draw therefrom grand and petit jurors for each term of the Circuit Court. Constitution of Mississippi, Sec. 264. Section 2358

of the Code of Mississippi for 1892, adopted the 1st day of April, 1892, and in force at the time of the finding of the bill of indictment filed herein against relator, provides that at the first meeting of each year, or as soon as practicable thereafter, the board of supervisors shall make a list of persons to serve as jurors in the Circuit Court for the next two terms to be held more than thirty days afterwards, and as a guide in making the list they shall use the registration book of voters, and shall select and list the names of qualified persons of good intelligence, sound judgment and fair character, and shall take them, as nearly as it can conveniently from the several districts in proportion to the number of the qualified persons in each, excluding all who have served on the regular panel within two years, if there be not a deficiency of jurors. Relator states that under section 283 of the new constitution of Mississippi the indictment returned against him should have been by a jury of the grand inquest of the said county, under the laws of the code of said State, adopted in 1880, because the crime for which this indictment was returned is alleged to have been committed January, 1892, before the statute of 1892 took effect.

"Relator states that under the laws of said State, provided by the Code of 1880 thereof, the only qualifications required were as shown by sec. 1661 of said code, to wit, 'All male citizens of the United States and not being under the age of twenty-one years nor over the age of sixty years, and not having been convicted of any infamous crime, shall be qualified to serve as jurors within the county of their residence.' Section 1664 of Code of 1880 also provides that the board of supervisors of each county shall, at least twenty days before every term of the Circuit Court, select twenty persons competent to serve as jurors in said county, to be taken, as nearly as conveniently may be, in equal numbers from each supervisor's district of the county, who shall serve as grand jurors for the next ensuing term of said court.

"Relator states that at the time the said grand jury of said county was elected, empanelled and charged by this court at the December term, 1892, a great Federal [right] of his was

abridged, viz., the civil right guaranteed to him under the Fourteenth Amendment to the Constitution of the United States, particularly, to wit, no State shall deny to any person within its jurisdiction the protection of the laws.

"Relator states that, on the 9th day of January, 1892, Robert Stinson, a white man, was killed at Refuge plantation in the said county, and that he was accused of the homicide; that prosecution against him had been commenced before the adoption of the Code of 1892; that by reason of the great prejudice against him by the officers charged with the selection of the said jury of grand inquest for the said December term of the said Circuit Court, which officers so charged are all members of the white race, and the relator herein being a member of the black race — black in color. Although at the time of selecting the grand jurors for the said December term, 1892, there were in the five supervisor districts of the said county of Washington 7000 colored citizens competent for jury service of the county of Washington, State of Mississippi, and 1500 whites qualified to serve as jurors in said county, there had not been for a number of years any colored man ever summoned on the grand jury of said county court; and that the colored citizens were purposely, on account of their color, excluded from jury service by the officers of the law charged with the selection of said jurors. Relator states that by reason of the great prejudice against him in this matter that the said officers of the law charged with the selection of the said grand jurors for the December term, 1892, on account of his color, being that of a negro, black, and the deceased being that of a white man of the white race, in selecting persons to serve as grand jurors at said term, all colored men were purposely on account of their color excluded by said officers; and that the said grand jury did then and there, being all white men purposely selected on account of their color, present the bill of indictment against relator for the murder of Robert Stinson aforesaid, on account of his color, and pray summons for witnesses to prove same. Relator avers that by reason of the great prejudice against him on account of his color, he could not secure a fair and impartial trial by an impartial

petit jury of the county of Washington, State aforesaid, and prays an opportunity to subpœna witnesses to prove the same, and, therefore, after hearing same, doth pray the removal of his case from this court to the United States Circuit Court for the western division of the Southern District of Mississippi, and that record hereof be properly certified to said court by an order from this court."

The petition for removal was denied, and the defendant excepted to the action of the court.

Thereupon the accused demanded that a special venire be summoned to try his case. The regular jury box for the court having been produced for the purpose of drawing therefrom the special venire, the defendant moved "to quash said jury box," upon the ground that it was illegal and had but few names therein. That motion was sustained, and a writ of special *venire facias* was directed to be issued for summoning fifty good and lawful men and qualified jurors to appear on a named day to serve as jurors in the cause. The sheriff was directed to serve on the defendant or his counsel a copy of the writ of *venire facias*, together with his return thereon, showing the names of the persons so summoned, and also a copy of the indictment. This order was executed, and the requisite number of jurors having appeared, on a subsequent day of the court the defendant moved to quash the special venire. The motion was overruled, the defendant taking an exception. The accused then announced himself ready for trial. A jury was selected, the defendant pleaded not guilty, and the trial resulted in a verdict of guilty as charged in the indictment. The opinion of the Supreme Court of the State states that this was the third trial of the defendant for the crime charged, each trial resulting in a verdict of guilty.

A new trial was asked upon various grounds, one of which was that the court erred in overruling the defendant's petition for the removal of the cause into the Circuit Court of the United States for trial; another, that it erred in not sustaining the motion to quash the special venire of fifty "good and lawful" men to serve as special jurors. These points were insisted upon in the Supreme Court of Mississippi. But that

court held that there was no error in overruling the motion to remove the case into the Federal Circuit Court. It also refused to disturb the verdict and judgment.

*Mr. Emanuel M. Hewlett*, (with whom was *Mr. Cornelius J. Jones* on the brief,) for plaintiff in error.

The question in this case is, whether the plaintiff in error was indicted, tried and convicted in the state courts regularly, and in due course of law, as prescribed by the laws of the State of Mississippi and the Constitution and laws of the United States.

It is well settled in the law and practice of this court that in dealing with such a question, the record alone is to be looked to, in ascertaining the true issue. Before we refer to the record it is proper to inform the court that the claim which plaintiff in error sets up in asserting his right to the relief, by this proceeding is, that he, a citizen, and a person of color, was within the jurisdiction of the State of Mississippi, by that State denied the equal protection of the laws thereof; that he was by the agents and officers of said State purposely discriminated against on account of his race, a negro, and his color.

The Fourteenth Amendment reserves to the plaintiff in error the right to have been first duly and regularly indicted by a grand jury of Washington county duly elected, summoned, sworn and charged according to the laws of the State, without partiality to the race or color of said jurors and without prejudice to the accused on account of the offence charged or his race and color. It must be admitted that wherever these rights are asserted a constitutional right is asserted. At the time of its adoption, the colored race had been recently emancipated from a condition of servitude, and made citizens of the States. It was apprehended that in some of the States of the Union, feelings of antipathy between the races would cause the dominant race by unfriendly legislation to abridge the rights of the other, and deny to them equal privileges and protection of the laws. To guard the previously subjected race from the effect of discrimination these provisions are

made a part o.' the fundamental law of the land, and their rights were placed under the protection of the Federal government. It was designed to assure the colored race the enjoyment of all of the civil rights that under the law are enjoyed by white persons, and to give that race the protection of the Federal government in that enjoyment, when it should be denied by the States. *Slaughter House cases*, 16 Wall. 67.

Considering this authority we contend that no other construction can be placed upon such actions of the said jury officers of Washington county aforesaid as are complained of in the petition for removal, especially after having been brought to the judicial notice of the trial court, and by that court approved, than, that the discrimination complained of was the action of the State of Mississippi.

The accused filed his petition for the removal of his trial from the circuit court of Washington county, State of Mississippi, to the United States Circuit Court for the western division of the Southern District of Mississippi. It was charged in that petition that the accused was purposely discriminated against on account of his race and color, by the exclusion from the grand jury which presented the indictment therein filed against him, of all members of his race, on account of their race and color. This exclusion complained of was charged to the officers of the said county who were charged under the laws with the duty of selecting, listing, summoning, empanelling and charging the said grand jury, and that the petit jury which was summoned to try the accused, was a jury of white men, selected and procured with the same gross irregularities as was the grand jury herein complained of, and for the same purposes.

The accused duly swore to that petition upon knowledge and belief. The trial court heard the petition, and, without any resistance on part of the State, denied the same and the accused was forced to trial.

Now then, the regular steps by way of appeal to the state Supreme Court having been taken, and judgment of affirmance having been rendered by that court, the record stands in this court for ultimate review.

The laws of the State of Mississippi regarding the selecting,

listing and forming the grand jury of the county aforesaid, cannot and are not complained of as the law; but the white race of the county of Washington entertaining such great prejudice against the negro race, and especially the accused, which prejudice was charged in the petition for removal, and the said officers of the law being all members of the white race, did, in their proceedings in the discharge of their duty in the said selection of jurors, wilfully and purposely turn from the well directed paths prescribed by the legislature of the State of Mississippi. Had they adhered to the letter of the state law the registration roll of the voters of the county should have been used by the Board of Supervisors of the county in listing the names of persons to serve as grand jurors for said December term of said circuit court.

The only qualifications required for jury service of any one under the law are likewise required of persons to be qualified voters in said county and State. Then, assuming that the Board of Supervisors did regularly select and list the names of the jurors for that term of the court at which the indictment was presented, and certified the same according to law, in face of the fact that on the registration roll of voters at that time there were seven thousand negroes of the county duly qualified for jury service and enrolled upon the registration roll of voters of the county, and only fifteen hundred white persons of the county so qualified, and the number of names required by law having therefrom been regularly drawn, delivered to the circuit clerk of said county by the clerk of the said Board of Supervisors, and by the circuit clerk aforesaid each name was copied on a separate slip of paper and regularly deposited in the jury box of the county, — we appeal to the reason of this court to know, if under these conditions any result could have been attained other than a fair and equitable listing of jurors for said term of court.

With these steps regularly taken by the proper authorities, followed up with the further requirements of the law, the names of the jurors listed, certified and delivered to the circuit clerk of the county, who copies the names on separate slips of paper and deposits the whole list of names delivered

and deposited as aforesaid, the law duly observed, there is no doubt in the minds of this court that some of those names drawn would have been those of negroes. Once in the "jury box" those names, in the course of the regular drawing of said jurors for the said term of fifty names for the first week, thirty names for the second week, thirty names for the third week, thirty names for the fourth week, thirty names for the fifth week and thirty names for the sixth week, making a total of two hundred names to have been drawn for that term of the circuit court at which the indictment was returned, could it be probable or reasonable to suppose that all the names so drawn, to the number of two hundred, would have by chance been all names of white men? The accused charged, in the presence of the jury officers of the county, that because of the great prejudice prevailing against him among the white race, with which race the said jury officers were identified, which officers under the law were charged with the duty of forming the grand jury for said December term, they did purposely disregard the state law, and thereby did, with the intent so to do, select as such jurors for said December term an entire white jury, to the entire exclusion of all negroes of the county aforesaid, though legally qualified for such jury service: and that such exclusion by said officers, of the negroes, was purposely made on account of their race and color.

We submit to the court, that the charges so made by the accused were grave, and merited some apprehension on the part of those charged, and prompt investigation on the part of the trial court.

The argument may be advanced, that, as the exclusion complained of is shown, upon the face of the petition for removal, to have been the unauthorized acts of individuals acting in disregard of the laws and hence not binding on the State, the State is not responsible for the acts of persons in official positions, who act contrary to the rule prescribed by the constitution or laws thereof; and that, as the laws of the State are not complained of by the accused, no remedy lies: but such a position is in discord with the *principles* underlying the Fourteenth Amendment, especially in

the State where the negroes, duly qualified in one of its counties for jury service in the circuit courts of such county, number seven thousand, to the number of fifteen hundred whites so qualified; and where the race prejudice prevails as it does in Washington county, Mississippi. Such a State through its people in its organic law, or Legislature, may enact the finest kind of laws, and spread them upon its constitution or statutes, merely to avoid Federal interference; and yet permit its officers (who are of the white race, the dominant race) to try white persons touching their life, liberty and property, strictly in accordance with the laws of the State, and try negroes touching their same interests contrary to the laws; thus accomplishing in an indirect manner the very deprivation which the people of the United States sought to prohibit by the enactment of the Fourteenth Amendment. We are to look to the spirit of the law of the amendment, and thus it will be seen that there is no sound principle supporting the doctrine, so advanced by the defendant in error. It is well settled by the decisions of this court that when rights are granted to the Federal government by the people of the country, Federal jurisdiction thereof becomes positive; and the rights so reserved, stand out supreme, and forbid the slightest infraction on the part of any state authorities, whether by letter of the laws or by executive or judicial officers acting in their official capacities. No State can violate these superior rules, with or without the consent of the person in whose case such reservation is shown upon the face of the proceedings to exist.

In all trials there are certain duties to be performed by the court; and a certain degree of diligence must be exercised by the accused. The court is supposed to sit in judgment upon all matters of law arising during the progress of the trial. We do not insist that the court could have had judicial knowledge of any irregularity on the part of the officers of Washington county, touching the rights of the accused in the indictment in question, in the performance of their duties in that regard as complained of, until brought to its judicial notice. We respect the presumption of due regularity always

attending the acts of officers when apparently regular upon the face of the proceedings, although the court might have known that there were seven thousand qualified jurors of the negro race in the county at the time of drawing said grand jury and only fifteen hundred whites so qualified under the law, at the time the list of two hundred names was by the said jury officers drawn to accommodate the said December term of the said circuit court.; and that from the number summoned to appear at the first week of said term from which number the grand jury in question was drawn, sworn and charged, no negro was seen upon said jury. In all this there is nothing to apprise the court judicially of any irregularity in the conduct of the said officers in the discharge of their official duties, resulting in any discrimination against the accused; although the court did have judicial knowledge of the presentment on the indictment returned by the grand jury aforesaid, which the court judicially knew to have been apparently regularly empanelled for that term. Up to this stage of the proceedings the trial court, as a court, was not a party to any such discrimination as charged. It was the duty of the court to proceed regularly on with the trial; but at the January term, 1895, when the accused was about to be put upon his trial under the said indictment, he attacked the regularity and validity of the said indictment; and while the Federal Constitution has prescribed no relief for one deprived of that equal protection of the laws of the State to the enjoyment of which the accused is by the Federal Constitution guaranteed, yet the remedy for such injury is provided for by Congress, which has prescribed that such a denial in a state court entitles the accused to the removal of his trial from the state court, where such a right is denied, to the Federal court.

The plaintiff in error filed his petition for removal and thus duly informed the court of such denial and discrimination, by presenting a series of clear and distinct charges against the jury officers of the county and officers of the court in the presence and hearing of the parties charged, which we have hereinbefore particularized, and thereupon prayed the process

of the court to compel the said officers to appear at the bar of the trial court, to be there examined under oath, touching the charges so made by him.

Judging from the language of the Supreme Court of Mississippi, in this case, even though the charges so made were seriously presented to the trial court, in all the legal formality and solemnity possible, that court of original jurisdiction owed the accused no consideration, because of the fact that after the petition for removal was disposed of, no motion was made to quash the indictment; but we will submit, that the motion to quash the indictment would not in any way have emphasized the rights due the accused, as shown by the petition. The principles underlying this proposition are finally settled by this court in *Neal* v. *Delaware*, 103 U. S. 370. "While a colored citizen, party to a trial involving his life, liberty or property, cannot claim, as matter of right, that his race shall have a representation on the jury, and while a mixed jury in a particular case is not within the meaning of the Constitution or always necessary to the equal protection of the laws; it is a right to which he is entitled, that in the selection of jurors to pass upon his life, liberty or property, there shall be no exclusion of his race or discrimination against them because of their color." See also *Strander* v. *West Virginia*, 100 U. S. 303; *Prigg* v. *Pennsylvania*, 16 Pet. 539; *United States* v. *Reese*, 92 U. S. 214.

The accused lost no right, merely because he did not move the trial court to quash the indictment. It was the duty of the court to have granted the petition for the removal, or of its own motion upon the facts charged and proven in the petition to have quashed the indictment, which latter action would have immediately divested all Federal jurisdiction and fully restored the jurisdiction of the state court. The question as to whether the petition for removal disclosed a case of denial of the constitutional right guaranteed him under the Fourteenth Amendment thereof is for this honorable court to answer by its judgment, if the acts of the officers of said county as charged in said petition constitute a denial on the part of the State in the manner prohibited by the said amend-

ment. This honorable court so declared in *Bush* v. *Kentucky*, 107 U. S. 110, 119, wherein Mr. Justice Harlan delivering the opinion of this court among other things said: "Again, it was declared that a denial upon the part of the officers of the State, charged with the duties in that regard of the right of a colored man, 'to a selection of grand and petit jurors without discrimination against his race because of their color, would be a violation of the Constitution and laws of the United States, which the trial court was bound to redress. As said by us in *Virginia* v. *Rives*, 100 U. S. 313, 'the court will correct the wrong, will quash the indictment or the panel, or, if not, the error will be corrected in a Superior Court, and ultimately in this court upon review.'"

The Federal Constitution is a code of granted organic powers, and these powers so granted are intended by the grantors for the perpetual preservation of the superior State, which is inseparable and indissoluble. This court has proper jurisdiction over matters respecting such granted powers, and the relief sought by the petition for removal in this cause is among the rights enumerated in the Constitution of the United States. Having laid down the law involving a construction of the Federal Constitution, wherein such discrimination as charged in the petition for removal was declared to be a violation to the Fourteenth Amendment, that judgment, coming as it did from the highest court in the nation with full jurisdiction over the subject reviewed thereby, becomes of equal binding force on the actions of all inferior courts in the Nation, as if the words in which such judgment was written were expressed upon the face of the Federal Constitution, or in the Federal statutes. *Green* v. *Neal*, 6 Pet. 291. When the trial court of Mississippi failed to grant the petition for removal, as prayed for in said petition, or to quash the indictment of its own motion; and the Supreme Court of the State declined to grant the proper relief, the State of Mississippi wilfully and intentionally violated the Constitution and laws of the United States, in discriminating against the plaintiff in error on the account of his race and color, and further by denying to him that equal protection

of its laws to which he was entitled under the Constitution and laws of the United States, for which it must account at the bar of this court.

As to whether Mississippi as a State is responsible for the act of the jury officers, as charged in the petition for removal, or whether the officers so charged are individually responsible, we contend that the doctrine upon that point is clearly laid down in the language of this court in *Ex parte Virginia*, 100 U. S. 339, by Mr. Justice Strong.

" The State acts by its legislative, its executive or its judicial authorities. It can act in no other way. The constitutional provision, therefore, must mean that no agency of the State or of the officers or agents by whom its powers are exerted, shall deny to any person within its jurisdiction the equal protection of the laws. Whoever, by virtue of public position under a state government, deprives another of property, life or liberty without due process of law, or denies or takes away the equal protection of the laws, violates the constitutional inhibition; and as he acts in the name of and for the State, and is clothed with the State's power, his act is that of the State. This must be so, or the constitutional prohibition has no meaning." See also *Neal* v. *Delaware*, 103 U. S. 370.

*Mr. Frank Johnston*, attorney general of the State of Mississippi, submitted on his brief.

MR. JUSTICE HARLAN, after stating the case, delivered the opinion of the court.

The first question presented for our consideration relates to the application of the accused for the removal of the prosecution from the state court into the Circuit Court of the United States.

By section 641 of the Revised Statutes it is provided: " When any civil suit or criminal prosecution is commenced in any state court, for any cause whatsoever, against any person who is denied or cannot enforce in the judicial tribunals of the State, or in the part of the State, where such suit or prosecution is pending, any right secured to him by any law pro-

viding for the equal civil rights of citizens of the United States, . . . such suit or prosecution may, upon the petition of such defendant, filed in said state court at any time before the trial or final hearing of the cause, stating the facts and verified by oath, be removed, for trial, into the next Circuit Court to be held in the district where it is pending. Upon the filing of such petition all further proceedings in the state court shall cease," etc.

In *Neal* v. *Delaware*, 103 U. S. 370, 385, 386, reference was made to the previous cases of *Strauder* v. *West Virginia*, *Virginia* v. *Rives* and *Ex parte Virginia*, 100 U. S. 303, 313, 339, and to sections 641 and 1977 of the Revised Statutes; also to the act of March 1, 1875, c. 114, 18 Stat. 335, which, among other things, declared that "no citizen, possessing all other qualifications which are or may be prescribed by law, shall be disqualified from service as grand or petit juror in any court of the United States, or of any State, on account of race, color or previous condition of servitude." The cases cited were held to have decided that the statutory enactments referred to were constitutional exertions of the power of Congress to enact appropriate legislation for the enforcement of the provisions of the Fourteenth Amendment, which was designed, primarily, to secure to the colored race, thereby invested with the rights, privileges and responsibilities of citizenship, the enjoyment of all the civil rights that, under the law, are enjoyed by white persons; that while a State, consistently with the purposes for which the amendment was adopted, may confine the selection of jurors to males, to freeholders, to citizens, to persons within certain ages, or to persons having educational qualifications, and while a mixed jury in a particular case is not, within the meaning of the Constitution, always or absolutely necessary to the enjoyment of the equal protection of the laws, and therefore an accused, being of the colored race, cannot claim as matter of right that his race shall be represented on the jury, yet a denial to citizens of the African race, *because of their color*, of the right or privilege accorded to white citizens of participating as jurors in the administration of justice would be a discrimina-

tion against the former inconsistent with the amendment and within the power of Congress, by appropriate legislation, to prevent; that to compel a colored man to submit to a trial before a jury drawn from a panel from which were excluded, *because of their color*, men of his race, however well qualified by education and character to discharge the functions of jurors, was a denial of the equal protection of the laws; and that such exclusion of the black race from juries because of their color was not less forbidden by law than would be the exclusion from juries, in States where the blacks have the majority, of the white race because of *their* color.

But those cases were held to have also decided that the Fourteenth Amendment was broader than the provisions of section 641 of the Revised Statutes; that since that section authorized the removal of a criminal prosecution before trial, it did not embrace a case in which a right is denied by judicial action during a trial, or in the sentence, or in the mode of executing the sentence; that for such denials arising from judicial action after a trial commenced, the remedy lay in the revisory power of the higher courts of the State, and ultimately in the power of review which this court may exercise over their judgments whenever rights, privileges or immunities claimed under the Constitution or laws of the United States are withheld or violated; and that the denial or inability to enforce in the judicial tribunals of the States rights secured by any law providing for the equal civil rights of citizens of the United States, to which section 641 refers, and on account of which a criminal prosecution may be removed from a state court, is primarily, if not exclusively, a denial of such rights or an inability to enforce them resulting from the constitution or laws of the State, rather than a denial first made manifest at or during the trial of the case.

We therefore held in *Neal* v. *Delaware* that Congress had not authorized a *removal of the prosecution from the state court* where jury commissioners or other subordinate officers had, without authority derived from the constitution and laws of the State, excluded colored citizens from juries because of their race.

In view of this decision, it is clear that the accused in the present case was not entitled to have the case removed into the Circuit Court of the United States unless he was denied by the constitution or laws of Mississippi some of the fundamental rights of life or liberty that were guaranteed to other citizens resident in that State. The equal protection of the laws is a right now secured to every person without regard to race, color or previous condition of servitude; and the denial of such protection by any State is forbidden by the supreme law of the land. These principles are earnestly invoked by counsel for the accused. But they do not support the application for the removal of this case from the state court in which the indictment was found, for the reason that neither the constitution of Mississippi nor the statutes of that State prescribe any rule for, or mode of procedure in, the trial of criminal cases which is not equally applicable to all citizens of the United States and to all persons within the jurisdiction of the State without regard to race, color or previous condition of servitude. Nor would we be justified in saying that the constitution and laws of the State had, at the time this prosecution was instituted, been so interpreted by the Supreme Court of Mississippi as to show, in advance of a trial, that persons of the race to which the defendant belongs could not enforce in the judicial tribunals of the State the rights belonging to them in common with their fellow-citizens of the white race. If such had been the case, it might well be held that the denial of the equal protection of the laws arose primarily from the constitution and laws of the State. But when the constitution and laws of a State, as interpreted by its highest judicial tribunal, do not stand in the way of the enforcement of rights secured equally to all citizens of the United States, the possibility that during the trial of a particular case the state court may not respect and enforce the right to the equal protection of the laws constitutes no ground, under the statute, *for removing the prosecution* into the Circuit Court of the United States in advance of a trial.

We may repeat here what was said in *Neal* v. *Delaware,* namely, that in thus construing the statute " we do not with-

hold from a party claiming that he is denied, or cannot enr force in the judicial tribunals of the State, his constitutional equality of civil rights, all opportunity of appealing to the. courts of the United States for the redress of his wrongs. For, if not entitled, under the statute, to the removal of the suit or prosecution, he may, when denied, in the subsequent proceedings of the state court, or in the execution of its judgment, any right, privilege or immunity given or secured to him by the Constitution or laws of the United States, bring the case here for review."

So, in *Bush* v. *Kentucky*, 107 U. S. 110, 116, which was an indictment for murder, returned before but tried after the Court of Appeals of Kentucky held unconstitutional a statute of that Commonwealth excluding from grand or petit juries citizens of African descent because of their race and color, and had declared that thereafter every officer charged with the duty of selecting or summoning jurors must so act without regard to race or color, this court said : " That decision was binding as well upon the inferior courts of Kentucky as upon all its officers connected with the administration of justice. After that decision, so long as it was unmodified, it could not have been properly said in advance of a trial that the defendant in a criminal prosecution was denied or could not enforce in the judicial tribunals of Kentucky the rights secured to him by any law providing for the equal civil rights of citizens of the United States, or of all persons within their jurisdiction. The last indictment was consequently not removable into the Federal court for trial under section 641 at any time after the decision in *Commonwealth* v. *Johnson* [78 Kentucky, 509] had been pronounced. This point was distinctly ruled in *Neal* v. *Delaware*, and is substantially covered by the decision in *Virginia* v. *Rives* [100 U. S. 313]. If any right, privilege or immunity of the accused, secured or guaranteed by the Constitution or laws of the United States, had been denied by a refusal of the state court to set aside either that indictment or the panel of petit jurors, or by any erroneous ruling in the progress of the trial, his remedy would have been through the revisory power of the highest court of the State, and ulti-

mately through that of this court." See also *In re Wood,* 140 U. S. 278, 284.

In his petition for the removal of the prosecution into the Circuit Court of the United States the defendant also states that, notwithstanding at the time of selecting the grand jurors for the said December term 1892 there were in the five supervisors' districts of the county of Washington 7000 colored citizens competent for jury service and 1500 whites qualified to serve as jurors, there had not been for a number of years any colored man summoned on the grand jury in that county ; and that colored citizens were purposely, on account of their color, excluded from jury service by the officers of the law charged with the selection of jurors. It is clear, in view of what has already been said, that these facts, even if they had been proved and accepted, do not show that the rights of the accused were denied by the constitution and laws of the State, and therefore did not authorize the removal of the prosecution from the state court. If it were competent, in a prosecution of a citizen of African descent, to prove that the officers charged with the duty of selecting grand jurors had, in previous years and in other cases, excluded citizens of that race, because of their race, from service on grand juries — upon which question we need not express an opinion — it is clear that such evidence would be for the consideration of the trial court upon a motion by the accused to quash the indictment, such motion being based upon the ground that the indictment against him had been returned by a grand jury from which were purposely excluded, because of their color, all citizens of the race to which he belonged. *United States* v. *Gale,* 109 U. S. 65, 69. But there was no motion to quash the indictment. The application was to remove the prosecution from the state court, and a *removal,* as we have seen, could not be ordered upon the ground simply that citizens of African descent had been improperly excluded, because of their race, and without the sanction of the constitution and laws of the State, from service on previous grand juries, or from service on the particular grand jury that returned the indictment against the accused.

We do not overlook in this connection the fact that the petition for the removal of the cause into the Federal court alleged that the accused, by reason of the great prejudice against him on account of his color, could not secure a fair and impartial trial in the county, and that he prayed an opportunity to subpœna witnesses to prove that fact. Such evidence, if it had been introduced, and however cogent, could not, as already shown, have entitled the accused to the *removal* sought; for the alleged existence of race prejudice interfering with a fair trial was not to be attributed to the constitution and laws of the State. It was incumbent upon the state court to see to it that the accused had a fair and impartial trial, and to set aside any verdict of guilty based on prejudice of race.

The petition for removal also proceeds upon the ground that the indictment was returned by a grand jury organized under the Code of Mississippi which went into operation in 1892 after the date of the alleged murder, when, it is contended, it should have been organized in the mode required by the Mississippi Code of 1880, in force at the time the offence in question was committed.

The organization of the grand jury under a statute of the State, (even if that statute was not applicable to offences committed before its passage,) rather than under a statute that was applicable, constitutes no ground for the removal of the prosecution into the Federal court, unless the statute whose provisions were followed either expressly or by its necessary operation denied to the accused some "right secured to him by any law providing for the equal civil rights of citizens of the United States." It is not every denial by a state enactment of rights secured by the Constitution or laws of the United States that is embraced by section 641 of the Revised Statutes. The right of removal given by that section exists only in the special cases mentioned in it. Whether a particular statute, which does not discriminate against a class of citizens in respect of their civil rights, is applicable to a pending criminal prosecution in a state court, is a question, in the first instance, for the determination of that court, and its right and duty to finally determine such a question cannot be interfered with

by removing the prosecution from the state court, except in those cases which, by express enactment of Congress, may be removed for trial into the courts of the United States. If that question involves rights secured by the Constitution and laws of the United States, the power of ultimate review is in this court whenever such rights are denied by the judgment of the highest court of the State in which the decision could be had. As the judges of the state courts take an oath to support the Constitution of the United States as well as the laws enacted in pursuance thereof, and as that Constitution and those laws are of supreme authority, anything in the constitution or laws of any State to the contrary notwithstanding, "upon the state courts, equally with the courts of the Union, rests the obligation to guard, enforce and protect every right granted or secured by the Constitution of the United States and the laws made in pursuance thereof, whenever those rights are involved in any suit or proceeding before them;" and "if they fail therein, and withhold or deny rights, privileges or immunities secured by the Constitution and laws of the United States, the party aggrieved may bring the case from the highest court of the State in which the question could be decided to this court for final and conclusive determination." *Robb* v. *Connolly*, 111 U. S. 624, 637.

But it is said that the statute under which the grand jury was organized was *ex post facto* when applied to the case of the present defendant, and for that reason the judgment should be reversed. This question does not depend upon section 641 of the Revised Statutes, but upon the clause of the Constitution forbidding a State to pass an *ex post facto* law. It is not clear that the record so presents this point as to entitle us to consider it under the statutes investing this court with jurisdiction to reëxamine the final judgments of the highest courts of the several States. But, as human life is involved, as the defendant pleaded not guilty, and as the State, by its attorney general, has discussed the question upon its merits without disputing the authority of this court to pass upon it, we will assume, and we think it may be properly assumed, that the plea of not guilty, in connection with the petition for removal,

sufficiently presents the question, and shows that the state court denied to the accused what he specially set up and claimed to be a right secured to him by the Constitution of the United States.

By the constitution of Mississippi of 1890 which was in force at the time of the commission of the alleged offence, it was provided: "No person shall be a grand or petit juror unless a qualified elector and able to read and write; but the want of any such qualification in any juror shall not vitiate any indictment or verdict. The legislature shall provide by law for procuring a list of persons so qualified, and the drawing therefrom of grand and petit jurors for each term of the Circuit Court." Sec. 264. And by the same instrument it was also provided: "All crimes and misdemeanors and penal actions shall be tried, prosecuted and punished as though no change had taken place, until otherwise provided by law." Sec. 283. By the Mississippi Code of 1880, in force when the alleged murder was committed, it was provided that "all male citizens of the United States and not being under the age of twenty-one years, nor over the age of sixty years, and not having been convicted of any infamous crime, shall be qualified to serve as jurors within the county of their residence," Sec. 1661; and by section 1664 of the same code it was provided that "the board of supervisors of each county shall, at least twenty days before the term of every Circuit Court, select twenty persons competent to serve as jurors in said county, to be taken, as nearly as conveniently may be, in equal numbers from each supervisor's district of the county, who shall serve as grand jurors for the next ensuing term of said court."

The Annotated Code of 1892 went into effect on the first day of November, 1892, all prior statutes being thereby repealed. Sections 2358, 2361, 2365 of that code provide: Sec. 2358. "The board of supervisors, at the first meeting in each year, or at a subsequent meeting if not done at the first, shall select and make a list of persons to serve as jurors in the Circuit Court for the next two terms to be held more than thirty days afterwards, and, as a guide in making the list, they shall use the registration books of voters; and it shall select and

list the names of qualified persons of good intelligence, sound judgment and fair character, and shall take them, as nearly as it conveniently can, from the several election districts, in proportion to the number of the qualified persons in each, excluding all who have served on the regular panel within two years, if there be not a deficiency of jurors." Sec. 2361. "The names of the persons on the jury list shall be written on separate slips of paper by the clerk of the Circuit Court, and put in a box kept for that purpose, marked 'Jury box,' which shall be securely locked and kept closed and sealed, except when opened to draw the jurors." Sec. 2365. "At each regular term of the Circuit Court, and at a special term if necessary, the judge shall draw, in open court, from the jury box the slips containing the names of fifty jurors to serve as grand and petit jurors for the first week and thirty to serve as petit jurors for each subsequent week of the next succeeding term of the court; and he shall make and carefully preserve separate lists of the names, and shall not disclose the name of any juror drawn. The slips containing the names so drawn shall be placed by the judge in envelopes, a separate one for each week, and he shall securely seal and deliver them to the clerk of the court, so marked as to indicate which contains the names of the jurors for the first and each subsequent week. If in drawing it appears that any juror drawn has died, removed or ceased to be qualified or liable to serve as a juror, the judge shall cause the slip containing the name to be destroyed, the name to be stricken from the jury list, and he shall draw another name to complete the required number."

The contention of the accused is that the constitution of the State (Sec. 283) required that the indictment against him should have been by a jury of the grand inquest organized as directed in the Code of 1880, because that code was in force at the date of the murder charged to have been committed; and that the law upon that subject in the Code of 1892 would be *ex post facto* if applied to his case.

We perceive in these constitutional and statutory provisions nothing upon which to rest the suggestion that the accused was tried under a law that was *ex post facto* in its application

to his case. At the time the homicide was committed no person was competent to be a grand or petit juror unless he was a qualified elector and able to read and write. This requirement was attended by an injunction that the legislature should provide by law for procuring a list of persons so qualified, and for drawing therefrom of grand and petit jurors for each term of the Circuit Court. Miss. Const. Sec. 264. And, as we have seen, it was further provided that all crimes and misdemeanors and penal actions should be tried, prosecuted and punished as though no change had taken place until otherwise provided by law. Miss. Const. Sec. 283. It is clear that the provision in the constitution of 1890 prescribing the qualifications of grand and petit jurors became the law of the State immediately upon the adoption of the constitution, and that legislation was not necessary to give it effect; and that the provisions of the Code of 1880 for the conduct of trials were superseded by those on the same subject in the Code of 1892.

It is equally clear that the provisions of the Code of 1892 regulating the selection of grand and petit jurors were not *ex post facto* as to the case of Gibson, although they were not in force when the alleged homicide was committed. The requirement of the constitution of 1890 that no person should be a grand or petit juror unless he was a qualified elector and able to read and write did not prevent the legislature from providing, as was done in the Code of 1892, that persons selected for jury service should possess good intelligence, sound judgment and fair character. Such regulations are always within the power of a legislature to establish unless forbidden by the constitution. They tend to secure the proper administration of justice and are in the interest, equally, of the public and of persons accused of crime. We do not perceive that the Code of 1892, in force when the indictment was found, affected in any degree the substantial rights of those who had committed crime prior to its going into effect. It did not make criminal and punishable any act that was innocent when committed, nor aggravate any crime previously committed, nor inflict a greater punishment than the law annexed to such crime at the time of its com-

mission, nor alter the legal rules of evidence in order to convict the offender. These are the general tests for determining whether a statute is applicable to offences committed prior to its passage. *Calder* v. *Bull*, 3 Dall. 386, 390; *Cummings* v. *Missouri*, 4 Wall. 277; *Ex parte Garland*, 4 Wall. 333; *Kring* v. *Missouri*, 107 U. S. 221, 228; *Duncan* v. *Missouri*, 152 U. S. 377, 382. The provisions in question related simply to procedure. They only prescribed remedies to be pursued in the administration of the law, making no change that could materially affect the rights of one accused of crime theretofore committed. The inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed. The mode of trial is always under legislative control, subject only to the condition that the legislature may not, under the guise of establishing modes of procedure and prescribing remedies, violate the accepted principles that protect an accused person against *ex post facto* enactments. In *Hopt* v. *Utah*, 110 U. S. 574, 589, a statute that permitted the crime charged to be established by witnesses who by the law at the time the offence was committed were incompetent to testify in any case whatever was adjudged not to be *ex post facto* within the meaning of the Constitution, the court observing that such a statute did not increase the punishment nor change the ingredients of the offence nor the ultimate facts necessary to establish guilt, but related "to modes of procedure only, in which no one can be said to have a vested right, and which the State, upon grounds of public policy, may regulate at pleasure." Hence it has been held that a general statute giving the government more challenges than it had at the time of the commission of a particular offence was constitutional. *Walston* v. *Commonwealth*, 16 B. Mon. 15, 39.

It is also assigned for error : 1. That the court ordered the sheriff " to summon fifty men from the good and lawful body of Washington county," etc., when he should have been ordered to summon "persons qualified as jurors," or "said fifty men, jurors as required by law." 2. That the order

directed the sheriff to "summon said fifty men to serve as special jurors in the case of *State* v. *John Gibson,* when the order should have directed the sheriff to summon fifty men or persons as jurors, and to serve as jurors in the case of the *State* v. *John Gibson* as special jurors." Without stopping to consider whether the particular order complained of was in accordance with correct practice, it is only necessary to say that the objection presented by the assignment of error raises no question of a Federal nature. The conduct of a criminal trial in a state court cannot be reviewed by this court unless the trial is had under some statute repugnant to the Constitution of the United States, or was so conducted as to deprive the accused of some right or immunity secured to him by that instrument. Mere error in administering the criminal law of a State or in the conduct of a criminal trial — no Federal right being invaded or denied — is beyond the revisory power of this court under the statutes regulating its jurisdiction. See *Andrews* v. *Swartz,* 156 U. S. 272, 276 ; *Bergemann* v. *Backer,* 157 U. S. 655, 659. Indeed, it would not be competent for Congress to confer such power upon this or any other court of the United States.

We may observe that the former decisions of this court, upon which the counsel for the accused relied with much confidence, do not go to the extent claimed by them. Underlying all of those decisions is the principle that the Constitution of the United States, in its present form, forbids, so far as civil and political rights are concerned, discrimination by the General Government, or by the States, against any citizen because of his race. All citizens are equal before the law. The guarantees of life, liberty and property are for all persons, within the jurisdiction of the United States, or of any State, without discrimination against any because of their race. Those guarantees, when their violation is properly presented in the regular course of proceedings, must be enforced in the courts, both of the Nation and of the State, without reference to considerations based upon race. In the administration of criminal justice no rule can be applied to one class which is not applicable to all other classes. The safety of the race the

larger part of which was recently in slavery, lies in a rigid adherence to those principles. Their safety — indeed, the peace of the country and the liberties of all — would be imperilled, if the judicial tribunals of the land permitted any departure from those principles based upon discrimination against a particular class because of their race. We recognize the possession of all these rights by the defendant; but upon a careful consideration of all the points of which we can take cognizance, and which have been so forcibly presented by his counsel, who are of his race, and giving him the full benefit of the salutary principles heretofore announced by this court in the cases cited in his behalf, we cannot find from the record before us that his rights secured by the supreme law of the land were violated by the trial court or disregarded by the highest court of Mississippi. We cannot say that any error of law of which this court may take cognizance was committed by the courts of the State, nor, as matter of law, that the conviction of the accused of the crime of murder was due to prejudice of race.

The judgment is, therefore,

*Affirmed.*