**Carroll F. YOUNGBLOOD,**
**Petitioner–Appellant,**

v.

**James A. LYNAUGH, Director, Texas Department of Corrections, Respondent–Appellee.**

No. 88–2888.

United States Court of Appeals, Fifth Circuit.

Sept. 8, 1989.

Rehearing and Rehearing En Banc Denied Oct. 19, 1989.

John R. "Randy" Farrar, Staff Counsel for Inmates, TDC, Huntsville, Tex., for petitioner-appellant.

S. Michael Bozarth, Asst. Atty. Gen., and Jim Mattox, Atty. Gen., Austin, Tex., for respondent-appellee.

Before GEE, GARZA and JONES, Circuit Judges.

GARZA, Circuit Judge:

This case presents a novel question in the Fifth Circuit under the *Ex Post Facto* clause of the United States Constitution. We are convinced that article 37.10(b) of the Tex.Code Crim.Proc., as applied to petitioner Youngblood under the circumstances of this case, violates the *Ex Post Facto* clause. We therefore REVERSE the district court's decision denying appellant's writ of habeas corpus and REMAND the case for a new trial.

## BACKGROUND

On March 17, 1982, appellant Carroll Youngblood was convicted by a Texas jury of aggravated sexual abuse. He was sentenced to life imprisonment and a fine of $10,000. His conviction was affirmed on appeal. Subsequently, he filed an application for a writ of habeas corpus with the Texas Court of Criminal Appeals, relying upon *Bogany v. State*, 661 S.W.2d 957 (Tex.Crim.App.1983) (en banc). In *Bogany*, the Texas Court of Criminal Appeals held that the sentence enhancement provision, section 12.42(c) Tex.Penal Code, does not authorize punishment to include a fine in addition to a prison sentence. The *Bogany* court concluded that the jury's verdict was void at its inception. It reversed the judgment and ordered a new trial.

In response to the *Bogany* decision, the Texas Legislature enacted article 37.10(b), Tex.Code Crim.Proc., which permits reformation of a verdict to omit any punishment not authorized by law. Article 37.10(b) eliminates the need to retry a convicted defendant. This provision went into effect on June 11, 1985. On October 9, 1985, the Texas Court of Criminal Appeals announced its decision in *Ex parte Johnson*, 697 S.W.2d 605 (Tex.Crim.App.1985) (en banc), which held that article 37.10(b) is procedural in nature and can be applied retroactively. In dissent, presiding Judge Onion of the Texas Court of Criminal Appeals argued that the retroactive application of article 37.10(b) violated the *Ex Post Facto* clause. One week later, on June 16, 1985, the Texas Court of Criminal Appeals denied Youngblood's application for writ of habeas corpus and, relying upon *Johnson*, applied article 37.10(b) to Youngblood's conviction, thereby deleting the unauthorized fine assessed by the jury.

Youngblood then filed a writ of habeas corpus petition in federal district court contending that the retroactive application of article 37.10(b) violated the *Ex Post Facto* clause of the United States Constitution. The district court dismissed Youngblood's petition. He now appeals from that dismissal.

## Discussion

*Exhaustion of State Remedies.*

■ The government argues that Youngblood's petition should be denied because he has never presented his federal *ex post facto* claim before a state tribunal in post-conviction proceedings. The district court concluded that forcing appellant to resort to post-conviction proceedings before the Texas Court of Criminal Appeals would be futile. We agree.

The Texas Court of Criminal Appeals decided *Ex parte Johnson* in October of 1985. In that case, the court concluded that art. 37.10(b) was purely procedural and might properly be applied to reform an

unauthorized verdict in cases that were pending at the time of the statute's passage. Also in that case, presiding Judge Onion argued in dissent that retroactive application of art. 37.10(b) violates the *Ex Post Facto* clause. One week after the decision in *Johnson*, the Texas Court of Criminal Appeals relied upon the same reasoning to deny Youngblood's state habeas petition. *Ex parte Youngblood,* 698 S.W.2d 671 (Tex.Crim.App.1985). Thus, it is clear that the *ex post facto* argument urged by Youngblood has been presented to, and rejected by, the Texas Court of Criminal Appeals. The district court was correct to conclude that it would be futile to require Youngblood to pursue this issue further in state-court proceedings.

*The Ex Post Facto Clause.*

Nine years after the adoption of the United States Constitution, the Supreme Court had occasion to consider the meaning of the words *ex post facto* as used in Art. I, § 9, cl. 3 and Art. I, § 10, cl. 1. In *Calder v. Bull,* 3 Dall. 386, 1 L.Ed. 648 (1798), the Court concluded that an *ex post facto* law is any provision that renders criminal "an action done before the passing of the law and which was innocent when done," or that "makes a crime greater than it was, when committed," or that "inflicts a greater punishment, than the law annexed to the crime, when committed," or that "alters the legal rules of evidence." *Id.,* 3 Dall. at 390.

More recently, the Supreme Court has stated that two critical elements must be present for a law to fall within the *ex post facto* prohibition. First, it " 'must be retrospective, that is, it must apply to events occurring before its enactment'; and second, 'it must disadvantage the offender affected by it.' " *Miller v. Florida,* 482 U.S. 423, 430, 107 S.Ct. 2446, 2451, 96 L.Ed.2d 351 (1987) (quoting *Weaver v. Graham,* 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)). The Court also noted that a law which merely changes "modes of procedure" will not violate the *Ex Post Facto* clause unless it also alters "substantial personal rights" of the accused. *Miller,* 482 U.S. at 430, 107 S.Ct. at 2451

(citing *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977)). It is uncontroverted that the Texas Court of Criminal Appeals, and the district court below, approved the application of art. 37.-10(b) to events that occurred in Youngblood's case before the enactment of the statute. The decision in this case turns upon whether the application of 37.10(b) worked to the disadvantage of the defendant.

At the time Youngblood was convicted, the jury rendered a verdict that was unauthorized by law; it assessed a term of years imprisonment in addition to a $10,000 fine. Also at the time of conviction, assessment of an unauthorized fine rendered the verdict void *ab initio* under Texas law and entitled the defendant to a new trial. Subsequent to Youngblood's conviction, the Texas legislature passed art. 37.10(b), which allowed an appellate court to reform an unauthorized verdict of the type assessed against Youngblood without the necessity of remanding for retrial. The Texas Court of Criminal Appeals then declared, in *Ex parte Johnson,* 697 S.W.2d 605, 607 (Tex.Cr.App.1985) (en banc), that art. 37.10(b) could be applied retroactively, to previously void verdicts. The majority concluded that, since the statute "does not constitute substantive law defining criminal acts or providing for penalties, it is procedural in nature." Thus, according to the court, the statute may be applied to pending as well as future cases.

The government urges that "it cannot be argued" that art. 37.10(b) effects substantive changes in the law when the highest state court yet to consider the question has declared it purely procedural. However, the government misapprehends the authority of this Court to decide whether the retrospective application of a state criminal statute violates the *Ex Post Facto* clause. Whether the standard of punishment established by a later state statute is more onerous than, or worsens the conditions imposed by, its predecessor, is a uniquely federal question which will be determined by the federal courts themselves. *Weaver v. Graham,* 450 U.S. 24, 33, 101 S.Ct. 960, 966, 67 L.Ed.2d 17 (1981); *Lindsey v.*

*Washington,* 301 U.S. 397, 400, 57 S.Ct. 797, 798, 81 L.Ed. 1182 (1937).

The state court's analysis of art. 37.10(b), as applied to Youngblood and others similarly situated, is faulty to the extent that it terminates one step short of a complete examination. In precedents dating back more than a century, the Supreme Court has held that statutes regulating procedure will violate the *Ex Post Facto* clause if they deprive the defendant of "a substantial right given to him by the law in force at the time to which his guilt relates." *Thompson v. Utah,* 170 U.S. 343, 352, 18 S.Ct. 620, 623, 42 L.Ed. 1061 (1897). Procedural statutes must "leave untouched all the substantial protections with which existing law surrounds the person accused of crime." *Id.,* citing *Duncan v. Missouri,* 152 U.S. 377, 382, 14 S.Ct. 570, 572, 38 L.Ed. 485 (1894).

Thus, we may accept the state court's characterization of 37.10(b) as procedural and still disagree with its conclusion in *Ex Parte Johnson* that the statute's application in these circumstances suffers from no *ex post facto* infirmity. The question is whether Youngblood's right to retrial, to which he was entitled before the passage of art. 37.10(b), was a "substantial protection" within the meaning of the Supreme Court's *ex post facto* jurisprudence.

The government argues that the retroactive application of art. 37.10(b) cannot offend the *Ex Post Facto* clause because it does not punish as a crime a previously innocent act, or make more burdensome the punishment of a crime after its commission or deprive the defendant of a defense available at the time the act was committed. Likewise, the authorities appended to the government's brief erroneously suggest that a statute must fit neatly within the confines of one of these enumerated pigeon holes or else it may not rightly be said to violate the *Ex Post Facto* clause.

These authorities fail to consider the import of *Thompson v. Utah, supra,* wherein the Supreme Court held that a law which authorized a jury of only eight persons, instead of twelve, to pass upon the guilt of the defendant, when applied retroactively, violated the *Ex Post Facto* clause. In that case, there was no punishment of a previously innocent act, there was no change in the burden of proof required to establish guilt and there was no elimination of a previously available defense. The focus in *Thompson v. Utah* was upon whether the retrospective deprivation of the right to trial before a jury composed of twelve persons rather than eight materially altered the position of the defendant to his disadvantage.[1]

In two other early cases, the Supreme Court instructed that a statute need not even relate to a crime, or inflict a punishment, in the judicial sense, for the commission of past crimes, in order to constitute an *ex post facto* law. In *Cummings v. The State of Missouri,* 4 Wall. 277, 18 L.Ed. 356 (1866), the Court held that the exclusion of a minister from the exercise of his clerical function unless he agreed to take an oath that he had not engaged in or encouraged armed aggression against the United States government was an *ex post facto* law. Similarly, in *Ex parte Garland,* 4 Wall. 333, 18 L.Ed. 366 (1866), the Court found that the exclusion of a lawyer from practice for his refusal to take the oath described in *Cummings, supra,* was *ex post facto.* Clearly then, determination of the question whether a statute punishes a previously innocent act, or makes more burdensome the standard of proof, or eliminates a defense that was available at the time the act was committed cannot be dispositive of the inquiry whether such a statute violates the *Ex Post Facto* clause. Once it is determined that the law in question was applied retrospectively,

1. We recognize that, in *Williams v. Florida,* 399 U.S. 78, 90 S.Ct. 1893, 26 L.Ed.2d 446 (1970), the Supreme Court set aside the requirement implicitly established in *Thompson v. Utah* that deliberation by a twelve-member jury is a constitutional prerequisite to a finding of guilt. This revisitation of one of the issues in *Thompson v. Utah,* however, left intact the proposition for which we cite that case: an *ex post facto* violation may occur in the absence of an increase in punishment, or a change in the burden of proof or an elimination of a previously available defense.

the salient issue becomes whether the law operated to disadvantage the accused in the exercise of a substantial right or protection that he previously enjoyed, not whether the circumstances of its application conform to a paradigmatic or illustrative category of harms.

■ At the time of Youngblood's conviction, it was the law of Texas that a verdict of the type rendered in this case was void *ab initio* and its imposition entitled the accused to a new trial. That right, with its attendant possibility that a second jury just might acquit the defendant, was apparently considered sufficiently "substantial" to provoke the Texas legislature to enact art. 37.10(b), authorizing an appellate court to reform the verdict and thereby deprive the defendant of the right to retrial. In any event, whether or not the Texas legislature perceived the *Bogany* right to be substantial, we conclude that it was.

Prior Texas law made it impossible to deprive defendants such as Youngblood of their liberty without affording them a new trial. Whether or not it is a wise policy to provide that level of protection against unauthorized verdicts, it cannot be gainsaid, in our opinion, that the subsequent elimination of that right worked to appellant's disadvantage.[2] Delineation of the boundary between "substantial" rights and those considered not substantial, like the distinction between fundamental and non-fundamental rights, is an inquiry not susceptible of examination by scientific formulae or comprehensive enumeration. However, given the universal references in the *ex post facto* jurisprudence to such concepts as "material disadvantage" and substantial "protection," we are confident that the right to have one's guilt retried before a different jury—with its attendant possibility that the outcome might be different the second time around—is comfortably encompassed within the category of rights considered "substantial."

Appellant was sentenced under a procedure that was not authorized by Texas law at the time of the commission of his offense. The retroactive application of art. 37.10(b) altered his right to retrial—a substantial right—to his material disadvantage. As applied to Youngblood, therefore, art. 37.10(b) is *ex post facto*. For the reasons set out above, we REVERSE the district court's decision denying appellant's writ of habeas corpus and REMAND this case for a new trial.

GEE, concurring:

Concurring entirely in the majority opinion in this very close case, I also agree with Judge Jones's observations regarding the Supreme Court's "modes of procedure" authorities such as *Thompson v. Utah*. Their present state constitutes more of a bright spectrum than a bright line.

EDITH H. JONES, concurring.

I concur with the majority opinion because, for *ex post facto* purposes, I cannot perceive a meaningful distinction between *Thompson v. Utah*, 170 U.S. 343, 18 S.Ct. 620, 42 L.Ed. 1061 (1897), and this case. *Thompson* acknowledged that "mere modes of procedure" are not within the ken of the *ex post facto* clause, but it proceeded to hold that the right to be tried by twelve jurors "was regarded, at the time of the adoption of the Constitution, as vital for the protection of life and liberty," and was enjoyed by the defendant at the time he committed the offense charge. 170 U.S. at 352, 18 S.Ct. at 623. Consequently, Utah's "procedural" change to permit criminal trials before eight jurors was held to operate *ex post facto* to deprive the defendant of this substantial right.

I suggest, however, that the distinction between "mere modes of procedure" and

---

**2.** We find understandable the Texas legislature's distaste for a rule of law that affords convicted criminal defendants a "second bite at the apple." Given the vicissitudes of a criminal trial before a jury, such a second chance bestows a considerable benefit upon a defendant at the same time that it imposes an unnecessary burden upon the state. In that regard, article 37.10(b) may well effect wise public policy. However, we may not allow considerations of public policy to interfere with the central inquiry before us: whether the retroactive application of art. 37.10(b) worked to the disadvantage of Youngblood in the exercise of a substantial protection.

substantial or vital procedural protections is a wobbly one under current Supreme Court jurisprudence. One other early case seems squarely to hold that a procedural change in state law violated the *ex post facto* clause. *Kring v. Missouri,* 107 U.S. 221, 2 S.Ct. 443, 27 L.Ed. 506 (1882) (change in the law applicable to guilty pleas, which exposed defendant to conviction for a more serious crime, and operated retroactively, violated *ex post facto* clause). A number of other decisions have found no *ex post facto* violation in retroactive "procedural" changes. *See Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977) (change in role of Florida juries in death penalty cases); *Beazell v. Ohio,* 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925) (defendant forced to undergo joint rather than separate trial for crime); *Mallett v. North Carolina,* 181 U.S. 589, 21 S.Ct. 730, 45 L.Ed. 1015 (1901) (state allowed to appeal from intermediate court's award of new trial to defendant); *Thompson v. Missouri,* 171 U.S. 380, 18 S.Ct. 922, 43 L.Ed. 204 (1898) (prior to second trial, law was changed to make circumstantial evidence admissible against defendant and he was convicted); *Gibson v. Mississippi,* 162 U.S. 565, 16 S.Ct. 904, 40 L.Ed. 1075 (1896) (change in juror qualifications); *Hopt v. Utah,* 110 U.S. 574, 4 S.Ct. 202, 28 L.Ed. 262 (1884) (change to allow convicted felon to testify as a witness against defendant).

There is little doubt that the defendant in several of these later cases was materially disadvantaged by the changes in criminal procedure which occurred after the commission of his offense. Consider the significance to a defendant of the right to a separate rather than joint trial with co-defendants, (*Beazell*) or of prohibiting testimony of a convicted felon (*Hopt*) or circumstantial evidence (*Thompson*) against a defendant, to say nothing of prohibiting the state's appeal from the grant of a new

trial to the defendant (*Mallett*). The Court emphasized, however, in *Dobbert,* that:

> Even though it may work to the disadvantage of a defendant, a procedural change is not *ex post facto.*

432 U.S. at 294, 97 S.Ct. at 2298.

If we are to continue to hold that "procedural" changes that do not affect the traditional *ex post facto* concerns—the definition of a proscribed or criminal act or its punishment or available defenses [1]—nevertheless run afoul of the clause, I fear that the Supreme Court's decisions offer little guidance for distinguishing among such procedural cases. In the absence of such guidance, I can see no overriding principle from which to disagree with the majority's conclusion that *this* procedural change so substantially affected the defendant's rights as to violate the *ex post facto* clause.

---

1. In *Beazell v. Ohio,* 269 U.S. 167, 169–70, 46 S.Ct. 68, 68, 70 L.Ed. 216 (1925), Mr. Justice Stone summarized the characteristics of an *ex post facto* law:

   "It is settled, by decisions of this Court so well known that their citation may be dispensed with, that any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed, is prohibited as *ex post facto.*"