The PEOPLE of the State of
Colorado, Petitioner,

v.

The DISTRICT COURT, Tenth Judicial District, and one of the judges thereof, The Honorable Gerald A. Marroney, Respondents.

The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Woodie M. ASHFIELD, Jr., a/k/a Robert Jackson, Defendant– Appellee.

No. 91SA422.

Supreme Court of Colorado,
En Banc.

June 29, 1992.

As Modified on Denial of Rehearing
Aug. 24, 1992.

---

**3.** The defendant asserts that revival of the 1986 statute violates various rights guaranteed by the United States and Colorado Constitutions. In view of the conclusion of a majority of the court that the 1986 statute is not revived, these arguments need not be addressed at this time.

G.F. Sandstrom, Jr., Dist. Atty., James S. Whitmire, Asst. Dist. Atty., David K. Gardner, Deputy Dist. Atty., Pueblo, for petitioner.

Matthew Martin, Pueblo, for Woodie M. Ashfield, Jr.

Gale A. Norton, Denver, for amicus curiae Office of the Atty. Gen.

Bonnie Wright–Benedetti, Englewood, for amicus curiae Colorado Dist. Attorneys' Council.

Chief Justice ROVIRA delivered the Opinion of the Court with respect to Parts II.A, III, and IV.

This appeal brought by the People arises from a ruling of the Pueblo County District Court which granted the motion of the defendant, Woodie M. Ashfield, Jr., a/k/a Robert Jackson, to strike the death penalty from consideration at his trial.[1] The trial court ruled that: 1) the doctrine of revival did not operate to make applicable the pre–1988 death penalty statute to the defendant; 2) sections 16–11–801 and –802 (enacted by House Bill 1038, act approved Oct. 11, 1991, ch. 6, sec. 1, §§ 16–11–801 and –802, 1991 Colo.2d Ex.Sess.Laws 16 (codified as §§ 16–11–801 and –802, but not yet appearing in the published Colorado Revised Statutes)) could not be applied to Ashfield because they violated the constitutional prohibition against ex post facto laws; 3) the provision in section 18–1–105(4), as amended in 1991, *see* § 18–1–105(4), 8B C.R.S. (1991 Supp.), which provides that a person convicted and sentenced to life imprisonment for a class 1 felony committed on or after July 1, 1990 is not eligible for parole, is unconstitutional as violative of the ex post facto clauses, and; 4) if Ashfield receives a sentence of life imprisonment, he will be eligible for parole in forty years. For the reasons set forth in our decision in *People v. District Court*, 834 P.2d 181 (Colo.1992) (hereinafter *Thomas* ), we agree with the court that the pre–1988

**1.** The People filed an original proceeding pursuant to C.A.R. 21 and appealed pursuant to § 16–12–102(1), as amended by House Bill 91S2–1008, ch. 5, sec. 1, 1991 Colo.2d Ex.Sess.Laws

15. By order dated November 27, 1991, we joined these two filings and stayed the proceedings in the district court.

statute cannot be revived by operation of law. However, sections 16–11–801 and –802 can be applied without violating the ex post facto clauses of the Colorado and United States Constitutions. *See id.*, at 192–202. Because the parole eligibility portion of section 18–1–105(4), 8B C.R.S. (1991 Supp.), covering class 1 felonies occurring after July 1, 1990, conflicts with section 16–11–802(1)(b), and since we find section 16–11–802(1)(b) applicable, we agree with the trial court that Ashfield, if sentenced to life imprisonment, would be eligible for parole after serving forty years.

## I

In March 1991, Ashfield was charged by information with several class 1 felonies including two counts of first-degree murder.[2] These charges arose out of an incident which occurred in February 1991. Several months later, in *People v. Young*, 814 P.2d 834 (Colo.1991), we held that the death penalty statute as amended in 1988 was unconstitutional because it eliminated the fourth step in the determination of whether to impose a sentence of life imprisonment or death.

In August 1991, the People gave notice of their intent to seek the death penalty against Ashfield if a legal death penalty was found to exist in Colorado by the trial date. In response, Ashfield moved to strike the death penalty from consideration in his case, arguing that the revival theory could not be invoked to reincorporate the fourth step back into the death penalty statute and that any future death penalty legislation could not be retroactively applied to him without violating the constitutional prohibition against ex post facto laws.

In September 1991, the legislature enacted House Bill 91S2–1001, reenacting the pre–1988 version of section 16–11–103 to again make available the death penalty as a possible sentence for individuals convicted

of class 1 felony offenses committed on or after September 20, 1991. Act approved Sept. 20, 1991, ch. 4, sec. 1, 1991 Colo.2d Ex.Sess.Laws 8 (codified as § 16–11–103, but not yet appearing in the published Colorado Revised Statutes) ("House Bill 1001"). The following month, House Bill 91S2–1038, enacting sections 16–11–801 and –802, was approved. House Bill 91S2–1038 states that it was adopted with the intent to cover the hiatus period in the death penalty, and provided that section 16–11–802, which provided for a four-step jury deliberation process, be applied to offenses committed after July 1, 1988, and before September 20, 1991. Act approved Oct. 11, 1991, ch. 6, sec. 1, §§ 16–11–801 and –802, 1991 Colo.2d Ex.Sess.Laws 16 (codified as §§ 16–11–801 and –802, but not yet appearing in the published Colorado Revised Statutes).

Responding to Ashfield's motion to strike the death penalty, the court ruled that "revival of the 1986 [pre–1988] law does not occur automatically by operation of law under the facts of this case" and that sections 16–11–801 and –802 create "an ex post facto application to this defendant and the [statutes are] therefore unconstitutional on [their] face and in violation of the United States and Colorado Ex Post Facto provisions...." Having found that sections 16–11–801 and –802 were facially unconstitutional, the court considered which statute was applicable for determining parole eligibility if the defendant was found guilty and sentenced to life imprisonment. The court ruled that the portion of section 16–11–802(1)(b), which allows for parole eligibility after forty years is served of a life sentence, *see* § 16–11–802((1)(b), ch. 6, sec. 1, 1991 Colo.2d Ex.Sess.Laws 16, 17, is ameliorative and, therefore, applicable to Ashfield without violating the ex post facto clauses.

The People appeal this order.

---

**2.** The record contains an amended information which was filed in Pueblo County District Court on March 28, 1991. The original information is not part of the record in this case. According to the amended information, in addition to first-

degree murder, Ashfield was charged with two counts of aggravated robbery, and one count each of first-degree aggravated motor vehicle theft, first-degree burglary, and second-degree burglary.

II

In the companion case of *Thomas,* 834 P.2d 181, 185–189 (Colo.1992), announced today, we set forth in detail the recent evolution of the death penalty in Colorado. The crimes with which Ashfield was charged occurred in the same month as the crimes with which Thomas was charged, and several months before our decision in *Young.* The judicial interpretation and resulting legislative changes in the death penalty sentencing statute as set forth in *Thomas,* therefore, affect Ashfield in the same manner as they affect Thomas. Additionally, Ashfield raises similar arguments about the constitutionality of allowing the prosecution to seek the death penalty against him. Therefore, our holding in *Thomas* is dispositive on the issues of revival of the pre–1988 statute and the constitutionality of retroactive application of sections 16–11–801 and –802 under the ex post facto clauses of the Colorado and United States Constitutions.

A

■ In *Thomas* we found that the fourth step in the jury deliberation procedure was not automatically revived by operation of law as a result of our holding in *Young.* Accordingly, the district court properly determined that revival of the pre–1988 law did not occur by operation of law under the facts of this case and we affirm the trial court's ruling on this issue.

B

■ We also examined application of sections 16–11–801 and –802, adopted subsequent to the date of the crimes, to a defendant who, like Ashfield, was charged with the commission of a class 1 felony which occurred prior to our holding in *Young,* and determined that such retroactive application would not violate the constitutional proscription against ex post facto laws. *Thomas,* at 191–202. Accordingly, we reverse the order of the trial court on this issue and remand the case with directions to allow the People to seek the death penalty against Ashfield at trial pursuant to sections 16–11–801 and –802.

III

■ Section 18–1–105(4), 8B C.R.S. (1991 Supp.), was changed by House Bill 91–1086, which was approved before our decision in *Young.* Act approved June 6, 1991, ch. 73, sec. 5, 1991 Colo.Sess.Laws 402, 404. This amended subsection reads as follows:

A person who has been convicted of a class 1 felony shall be punished by life imprisonment unless the proceeding held to determine sentence according to the procedure set forth in section 16–11–103, C.R.S., results in a verdict which requires imposition of the death penalty, in which event such person shall be sentenced to death. As to any person sentenced for a class 1 felony, for an act committed on or after July 1, 1985, life imprisonment shall mean imprisonment without the possibility of parole for forty calendar years. *As to any person sentenced for a class 1 felony, for an act committed on or after July 1, 1990, life imprisonment shall mean imprisonment without the possibility of parole.*

(Emphasis added to reflect change in statute.) This statute directly conflicts with section 16–11–802(1)(b), which was enacted post-*Young.* Section 16–11–802(1)(b) states in pertinent part:

For offenses committed before July 1, 1985, the jury shall be instructed that life imprisonment means life without the possibility of parole for twenty calendar years. For offenses committed on or after July 1, 1985, the jury shall be instructed that life imprisonment means life without the possibility of parole for forty calendar years.

Act approved Oct. 11, 1991, ch. 6, sec. 1, § 16–11–802(1)(b), 1991 Colo.2d Ex.Sess. Laws 16, 17 (codified as section 16–11–802(1)(b) but not yet appearing in the published Colorado Revised Statutes). Although these conflicting provisions are not part of the same statute, we nonetheless recognize that our primary duty is, where possible, to afford a construction which would harmonize the two provisions, and harmonize each provision with the overall

statutory scheme for criminal sentencing. *City of Florence v. Board of Waterworks of Pueblo,* 793 P.2d 148, 151 (Colo.1990); *City of Ouray v. Olin,* 761 P.2d 784, 788 (Colo.1988); *Mooney v. Kuiper,* 194 Colo. 477, 479, 573 P.2d 538, 539 (1978).

■ This new language in section 18–1–105(4) is compatible with the 1991 version of section 16–11–103(1)(b) (as enacted by H.B. 91S2–1001, ch. 4, sec. 1, 1991 Colo.2d Ex.Sess.Laws 8, 9) which states that the jury shall be instructed that life imprisonment means life without the possibility of parole for class 1 felony offenses committed on or after July 1, 1990. Section 16–11–103 is applicable to offenses that occur on or after September 20, 1991. § 16–11–801, ch. 6, sec. 1, 1991 Colo.2d Ex.Sess. Laws 16. We are able, therefore, to harmonize section 18–1–105(4) with section 16–11–103 and hold that for class 1 felony offenses that occur on or after September 20, 1991, the jury shall be instructed that life imprisonment means life without the possibility of parole.

■ Here, however, the added language in section 18–1–105(4) was directly and subsequently altered by section 16–11–802(1)(b) as to class 1 felony crimes that occurred during the period from July 1, 1990, until September 19, 1991. Section 18–1–105(4) mandates that those individuals sentenced to life imprisonment for class 1 felonies occurring during this period would not be eligible for parole, while section 16–11–802(1)(b) mandates that such individuals would be eligible for parole after forty years.[3] Because we are faced with contradictory language regarding parole eligibility during this time period under these two provisions, we cannot simultaneously give effect to both provisions and are directed by section 2–4–206, 1B C.R.S. (1980), which states:

> If statutes enacted at the same or different sessions of the general assembly are irreconcilable, the statute prevails which is latest in its effective date. If the

irreconcilable statutes have the same effective date, the statute prevails which is latest in its date of passage.

We also must avoid a construction which would retroactively apply a statute in violation of the ex post facto clause of either the United States or Colorado Constitution. *U.S. Const.* art. I, § 10; *Colo. Const.* art. II, § 11; *Thomas,* 834 P.2d 181, 192–194 (Colo.1992) (discussing the ex post facto clauses).

■ By giving effect to section 18–1–105(4), Ashfield would not be eligible for parole if he were sentenced to life imprisonment. Giving effect to section 16–11–802(1)(b), however, would allow for possible parole after serving forty years. This latter construction would, therefore, also satisfy the rule of lenity. Under this rule, ambiguities in penal statutes or, as here, in the criminal sentencing scheme, should be construed in favor of the person whose liberty interests are affected. *Faulkner v. District Court,* 826 P.2d 1277, 1278–79 (Colo.1992) (discussing rule of lenity).

■ Since section 16–11–802(1)(b) has a later effective date, was later enacted, and operates in an ameliorative manner for criminal defendants, *see Thomas,* at 199–202, we hold now that it controls and that portion of section 18–1–105(4) which provides for no possibility of parole for persons sentenced to life imprisonment following conviction for class 1 felony offenses occurring during the period from July 1, 1990, until September 19, 1991, is abrogated by this later enactment. Thus, section 16–11–103(1)(b), as amended by House Bill 1001, controls parole eligibility for convictions and sentences to life imprisonment based on class 1 felony offenses occurring on or after September 20, 1991, and section 16–11–802(1)(b) controls parole eligibility for class 1 felony offenses occurring during the period from July 1, 1990 until September 19, 1991.

---

**3.** We realize that § 16–11–103(1)(b) and § 16–11–802(1)(b) both consider what the jury should be instructed will occur as far as parole eligibility while § 18–1–105(4) mandates what the actual parole eligibility shall be. We find this difference in statutory language insignificant, however, because the jury's instruction on parole eligibility obviously must be consistent with the actual available statutory eligibility.

## IV

Having determined that sections 16–11–801 and –802 are applicable if Ashfield is convicted of the charges of first-degree murder, we look to these new statutes for their mandate on parole eligibility. The offenses with which Ashfield has been charged occurred in February 1991. Pursuant to section 16–11–802, the jury should be instructed that Ashfield, if sentenced to life imprisonment, would be eligible for parole after serving forty years. Accordingly, we affirm the trial court on this ruling.

ERICKSON, J., specially concurs as to Part II.A.

KIRSHBAUM and VOLLACK, JJ., file dissents as to Part II.A.

ROVIRA, C.J., announced the Judgment of the Court and delivered an Opinion with respect to Part II.B, in which VOLLACK, J., joins.

ERICKSON, J., files a specially concurring opinion as to Part II.B.

MULLARKEY, J., files an opinion concurring in the judgment as to Part II.B.

LOHR, J., files a dissent as to Part II.B, which QUINN, J., joins in its entirety.

KIRSHBAUM, J., files a dissent as to Part II.B.

Justice ERICKSON specially concurring:

I specially concur for the reasons set forth in *People v. District Court*, 834 P.2d 181 (Colo.1992).

Justice MULLARKEY specially concurring:

I join the court's opinion except as to Part II.B., in which I concur in the judgment only for the reasons set forth in my opinion concurring in the judgment as to Part III of *People v. District Court*, 834 P.2d 181 (Colo.1992).

Justice LOHR concurring in part and dissenting in part:

For the reasons expressed in my dissenting opinion in *People v. District Court*, 834 P.2d 181 (Colo.1992), I would hold that the ex post facto clauses of the Colorado and United States Constitutions prohibit the prosecution from seeking the death penalty against the defendant, Woodie M. Ashfield, Jr., in the present case. I therefore dissent from the contrary holding of the plurality.[1] I agree with the majority, however, that the doctrine of revival does not permit the pre–1988 death penalty statute to be applied in Ashfield's trial. I also agree with part III of the majority opinion concerning Ashfield's parole eligibility in event of conviction. For the foregoing reasons, I concur in part and dissent in part.

QUINN, J., joins in this concurrence and dissent.

Justice KIRSHBAUM concurring in part, specially concurring in the result in part, and dissenting in part:

I join parts III and IV of the opinion, which hold that under applicable statutory criteria the defendant in this case would be eligible for parole after serving forty years of any life sentence imposed by a jury. However, for the reasons set forth in my opinion specially concurring and dissenting in *People v. District Court*, 834 P.2d 181 (Colo.1992), I respectfully dissent from the conclusion reached by a majority of the court in part IIA of the opinion that the four-step jury deliberation process set forth in section 16–11–103, 8A C.R.S. (1986), was not revived as the result of our determination in *People v. Young*, 814 P.2d 834 (Colo.1991), that section 16–11–103, 8A C.R.S. (1986 & 1990 Supp.), was unconstitutional. Because I believe the earlier statute must be deemed revived as the result of our decision in *People v. Young*, I concur specially with the majority's ultimate determination that in this case the People

---

**1.** The opinion authored by Chief Justice Rovira is a majority opinion as to part IIA, the revival issue, and a plurality opinion as to part IIB, the ex post facto issue. In referring to the Chief Justice's opinion, I characterize it as either the majority opinion or the plurality opinion depending on the part of the opinion to which reference is made.

may seek the death penalty against the defendant.[1]

I also dissent from the conclusion reached by a plurality of the court in part IIB of the opinion that the adoption of House Bill 91S2–1038 did not violate prohibitions against adoption of ex post facto legislation contained in article II, section 11, of the Colorado Constitution. As indicated in my opinion specially concurring and dissenting in *People v. District Court,* I find persuasive the conclusions and reasoning set forth in parts I, II, and III of Justice Lohr's dissent in that case.

Justice VOLLACK concurring in part and dissenting in part:

I incorporate my dissent to part II of *People v. District Court,* 834 P.2d 181 (Colo.1992), herein. I respectfully dissent to part II A only, wherein the majority holds that revival does not resurrect the 1986 statute in this case.[1]

---

1. The defendant asserts that application of the doctrine of statutory revival to revive the 1986 statute would violate federal and Colorado constitutional prohibitions guaranteeing due process of law, prohibiting the adoption of ex post facto laws, and prohibiting the revival, amendment or extension of laws. In view of the conclusion of a majority of the court that

the 1986 statute is not revived, these constitutional arguments need not be addressed.

1. The defendant asserts that revival of the 1986 statute violates various rights guaranteed by the United States and Colorado Constitutions. In view of the conclusion of a majority of the court that the 1986 statute is not revived, these arguments need not be addressed at this time.