The PEOPLE of the State of Colorado, Plaintiff–Appellant,

v.

Joseph Nick AGUAYO and Marvin Dennis, Jr., Defendants–Appellees.

The PEOPLE of the State of Colorado, Petitioner,

v.

DISTRICT COURT, GILPIN COUNTY, Colorado, and the Honorable Kenneth E. Barnhill, the Judge thereof, Respondents.

Nos. 92SA148, 92SA149.

Supreme Court of Colorado, En Banc.

Nov. 9, 1992.

Donald E. Mielke, Dist. Atty., Donna Skinner Reed, Chief Appellate Deputy Dist. Atty., Golden, for plaintiff-appellant.

Schoenwald & Lewis, P.C., Forrest W. Lewis, Denver, for Marvin Dennis, Jr.

David F. Vela, Public Defender, Terri L. Brake, Chief Deputy Public Defender, Denver, for Joseph Nick Aguayo.

Chief Justice ROVIRA delivered the Opinion of the Court as to Parts I and II and delivered the Judgment of the Court as to Part III.

The People appeal a ruling of the Gilpin County District Court precluding the death penalty from consideration at the trial of the defendants, Joseph Nick Aguayo and Marvin Dennis, Jr.[1] The trial court ruled that sections 16–11–801 and –802, 8A

---

**1.** The People filed an original proceeding pursuant to C.A.R. 21 and appealed pursuant to § 16–12–102(1), as amended by House Bill 91S2–1008, ch. 5, sec. 1, 1991 Colo.2d Ex.Sess.Laws

**15.** By order dated April 9, 1992, we joined these two cases and stayed the proceedings in the district court.

C.R.S. (1992 Supp.), could not be applied to subject defendants to the death penalty because such application would violate the ex post facto clause of the Colorado Constitution. Additionally, the court held that the pre–1988 death penalty statute was not revived as a result of our holding in *People v. Young*, 814 P.2d 834 (Colo.1991), where we found the 1988 version of the death penalty sentencing statute unconstitutional (§ 16–11–103, 8A C.R.S. (1988 Supp.) ("1988 statute")).[2] We affirm.

## I

The order of relevant events plays an important role in our decision. Because of their significance we begin with a chronology of the death penalty sentencing statutory amendments as related to the occurrences in this case.

Prior to 1988, a jury was required to follow a four-step sentencing procedure in determining whether to impose a sentence of life imprisonment or death. *See* § 16–11–103, 8A C.R.S. (1986) ("pre–1988 statute").[3] In 1988, this statute was amended by Senate Bill 78 (1988 statute) to consolidate two of the four steps. The fourth step was thus eliminated, and Senate Bill 78 specifically repealed section 16–11–

103(2)(a)(III), the source of the fourth step. On July 9, 1991, we announced our decision in *People v. Young*, 814 P.2d 834 (Colo. 1991), finding that the death penalty sentencing statute as amended in 1988 was unconstitutional because it eliminated the fourth step of the jury's deliberation process in determining whether to impose a sentence of life imprisonment or death upon conviction for a class 1 felony. Approximately one month later, defendants were charged with several felonies, including two counts of first degree murder, aggravated robbery, and conspiracy to commit aggravated robbery, as a result of the death of Rex Hayden Miller on July 30, 1991. Both defendants plead not guilty.

In response to this court's decision in *Young*, but after the commission of the charged offenses, the General Assembly in House Bill 91S2–1001, repealed and reenacted with amendments the death penalty sentencing statute. § 16–11–103, 8A C.R.S. (1992 Supp.) (approved and effective September 20, 1991). House Bill 91S2–1001, by reenacting the pre–1988 version of the death penalty statute, § 16–11–103, 8A C.R.S. (1986) (the pre–1988 statute), again made the death penalty available as a sentence for persons convicted of class 1 felo-

---

**2.** As we stated in *People v. District Court (Thomas)*, 834 P.2d 181, 184 n. 1 (Colo.1992):

Since the pre–1988, the 1988, and the 1991 death penalty sentencing statutes are all codified at section 16–11–103 (the 1988 and 1991 statutes really only constituting amendments to the pre–1988 statute), it is important to differentiate these provisions by providing them with different labels. Because an understanding of the evolving legislation is critical to an understanding of this opinion, the following synopsis is provided at the outset for reference:

1. "Pre–1988 statute" refers to section 16–11–103, 8A C.R.S. (1986), which set forth a four step process for jury deliberations in determining whether to impose a sentence of life imprisonment or a sentence of death.
2. "1988 statute" also refers to section 16–11–103, 8A C.R.S. (1988 Supp.), but the reference is to the death penalty sentencing statute as amended by Senate Bill 78 in 1988. Section 3 of this Bill eliminated the fourth step in the jury deliberation process by repealing the provision in the pre–1988 statute which set forth this step.

**3.** "House Bill 1001" also refers to section 16–11–103, [8A C.R.S. (1992 Supp.)] and is the label for the death penalty sentencing statute as amended in September 1991.... This provision again reenacts the fourth step and is applicable to class one felony offenses occurring on or after September 20, 1991.

**4.** "House Bill 1038" refers to two new statutes enacted in October, 1991—sections 16–11–801 and 16–11–802.

A. Section 16–11–801 states that the pre 1988 statute is reenacted to the extent it was not revitalized upon a finding that the 1988 statute was unconstitutional.

B. Section 16–11–802 is yet another death penalty sentencing statute which is essentially identical to the pre–1988 statute (with certain changes as discussed in the text) and is applicable to class one felonies which occur from July 1, 1988 until September 19, 1991.

**3.** In *People v. Tenneson*, 788 P.2d 786, 789 (Colo. 1990), we outlined the four steps.

ny offenses committed on or after September 20, 1991.[4]

On October 11, 1991, with the express intent that "there be no hiatus in the imposition of the death penalty as a sentence for the commission of a class 1 felony in the State of Colorado as a result of the holding of the Colorado Supreme Court in *People v. Young*," House Bill 91S2–1038 was enacted, creating two new statutes. Ch. 6, sec. 1, §§ 16–11–801 and –802, 1991 Colo.2d Ex.Sess.Laws 16 (codified as §§ 16–11–801 and –802, 8A C.R.S. (1992 Supp.)). In essence, section 16–11–801 provides that to the extent that the pre–1988 statute was not "automatically revitalized by operation of law," section 16–11–802 was applicable to offenses committed on or after July 1, 1988, and before September 20, 1991. Section 16–11–802 provides for a four-step jury deliberation process, and is almost identical to the pre–1988 statute.[5]

Both defendants filed motions to preclude the death penalty from consideration. The trial court granted defendants' motions, rejecting the People's argument that the pre–1988 statute was revived as a result of the declaration in *Young* that the 1988 statute was unconstitutional. The court also ruled that application of section 16–11–802, as enacted by House Bill 91S2–1038, would violate the ex post facto clause of the Colorado Constitution art. II, § 11. This appeal followed.

## II

Recently, in *People v. District Court (Thomas)*, 834 P.2d 181 (Colo.1992) (hereinafter *Thomas*), we set forth a detailed history of the death penalty sentencing statute and the relevant changes to that statute. A similar argument concerning the issue of revival of the pre–1988 statute was raised in *Thomas*. In light of our opinion in *Thomas*, and for the reasons stated therein, the district court properly determined that the People could not seek the death penalty against Aguayo and Dennis under the pre–1988 statute and we affirm the trial court's ruling on this issue.

## III

The People urge that sections 16–11–801 and –802 (collectively referred to as "House Bill 1038") can be retroactively applied to the defendants here without offending either federal or state ex post facto protections. In *Thomas*, we set forth the standard under which legislation is to be examined to determine an ex post facto violation. As in *Thomas*, we examine House Bill 1038 "under the standard that the ex post facto clause is violated when a

4. The People then filed a "Notice of Intent to Qualify the Trial Jury to Impose a Sentence of Death Pursuant to C.R.S. 16–11–103 (1991 as amended), House Bill 91S2–1001." The notice was filed forty-one days before the scheduled trial, but the court ruled that the People had not provided the defendants with adequate notice that this was a death penalty case, and denied the request to qualify the jury to impose the death penalty. The People appealed this ruling, and in *People v. District Court*, 825 P.2d 1000 (Colo.1992), we found that the defendants received adequate notice of the People's intent to seek the death penalty and held that the district court erred in precluding the People from seeking the death penalty against these defendants.

In *District Court* we addressed only the limited issue presented to us: "whether the trial court abused its discretion in denying the People the opportunity to seek the death penalty under the circumstances." *Id.* at 1002. *See* People's Pet. for Relief Pursuant to C.A.R. 21, at 9; Amended Order to Show Cause (Nov. 7, 1990). Those circumstances did not include an examination of whether H.B. 91S2–1038 violat-

ed the ex post facto prohibition of either the Colorado or the United States Constitution. In the Answer to Amended Order to Show Cause, defendants stated that H.B. 91S2–1038 was not before this court on appeal. The trial court's denial of the request to "death-qualify" the jury was based solely on the lack of adequate notice to the defendants. In fact, H.B. 91S2–1038 was approved the day of the hearing to death-qualify the jury. The only possible basis for the trial court to have addressed the applicability of H.B. 91S2–1038 would have been on the motion to reconsider the denial of the request to death-qualify the jury, which the trial court denied without comment. As such, it should not be construed as the *ratio decidendi* of the *District Court* opinion.

5. Section 16–11–802 varies from the 1988 statute in that (1) it includes a four-step jury deliberation process, and (2) it does not incorporate two amendments made to the 1988 statute as discussed in *Thomas*. *See People v. District Court (Thomas)*, 834 P.2d 181, 185–88 (Colo.1992) (reviewing recent amendments to the death penalty sentencing statute).

statute punishes as a crime conduct which was innocent when done, makes more onerous the punishment for a crime after its commission, or deprives a defendant of a defense that was available at the time the crime was committed." *Thomas*, 834 P.2d at 199 (plurality opinion of Rovira, C.J.) (footnote omitted). In *Thomas*, the law annexed to the crime was a sentencing statute later found to be constitutionally infirm. Because the subsequent statute did not involve a more onerous punishment than was offered by the judicially invalidated statute, the subsequent statute could be retroactively applied. Thus, we held that application of House Bill 1038 to a defendant accused of committing a class 1 felony *before* the decision in *Young* did not violate either the federal or state proscriptions against ex post facto laws.

Here, however, the offenses with which the defendants are charged occurred *after* our decision in *Young*. As a result of our decision in *Young*, at the time defendants allegedly committed these class 1 felony offenses there was no valid death penalty sentencing statute in effect.[6] Applying sections 16–11–801 and –802 retroactively so as to impose a death penalty would, therefore, inflict a greater punishment than the law annexed to the crime when committed, thus violating both the federal and state constitutional proscriptions against ex post facto laws.

However, the People argue that section 18–1–105(1)(a)(IV), 8B C.R.S. (1992 Supp.) (class 1 felony punishable by minimum sentence of life in prison or maximum sentence of death), was an operative fact placing the defendants on notice that death was a possible penalty for first degree murder. This argument, however, ignores the existence of section 18–1–105(4) which provides:

> (4) A person who has been convicted of a class 1 felony *shall be punished by life imprisonment unless the proceeding held to determine sentence according to the procedure set forth in section 16–11–103, C.R.S.*, results in a verdict which

requires imposition of the death penalty, in which event such person shall be sentenced to death.

§ 18–1–105(4), 8B C.R.S. (1992 Supp.) (emphasis added). By its plain language, section 18–1–105 contains a mandate that in the absence of sentencing procedures in accordance with section 16–11–103, the only penalty for a class 1 felony is life imprisonment. In *Young*, we found the death penalty sentencing statute contained in the 1988 statute, § 16–11–103, 8A C.R.S. (1988 Supp.), to be unconstitutional. *Young*, 814 P.2d 834, 846–47 (1992) (plurality opinion of Lohr, J.). Thus, contrary to the People's assertion, at the time of the alleged offenses section 18–1–105 gave notice that the death penalty would not be imposed for class 1 felonies. At the time of the offenses, the only possible punishment for class 1 felonies was life imprisonment.

Accordingly, we affirm the trial court's ruling that the prosecution cannot seek the death penalty against the defendants in this case.

### Justice LOHR specially concurring:

I concur in the judgment of the court and in parts I and II of the majority opinion. I agree as well that the death penalty is not an available sanction for a crime of first-degree murder committed between July 9, 1991, the date of our decision in *People v. Young*, 814 P.2d 834 (Colo.1991), and September 20, 1991, the effective date of the current death penalty statute, commonly referred to as House Bill 1001, now codified at section 16–11–103, 8A C.R.S. (1992 Supp.), under the rationale adopted by a majority of the court in *People v. District Court*, 834 P.2d 181 (Colo.1992) (*Thomas*). *See* maj. op., part III, at 338–339. I adhere to the view expressed in my separate opinion in *Thomas*, however, that application of the death penalty for any first-degree murder committed between the July 1, 1988, effective date of Senate Bill 78, eliminating the fourth step of the process by which a

---

6. As this court stated in *Thomas:* "After *Young* there was no valid jury process for determining whether to impose a death sentence. Once the death option is removed, then the only autho- rized penalty for conviction of a class 1 felony is life imprisonment." *Thomas*, 834 P.2d at 191 (plurality opinion of Rovira, C.J.).

jury is to determine whether the death penalty should be imposed on a person convicted of first-degree murder,[1] and the September 20, 1991, effective date of House Bill 1001, reenacting the fourth step, would violate the Colorado Constitution's prohibition of ex post facto legislation. *See Thomas*, 834 P.2d at 213–31 (Lohr, J., concurring in part and dissenting in part).

QUINN and KIRSHBAUM, JJ., join in this special concurrence.

Justice ERICKSON specially concurring:

I agree with the majority that the district court properly determined that the prosecution could not seek the death penalty against Aguayo and Dennis. However, in my view, we need not revisit the applicability of the doctrine of revival and the ex post facto clause. I also write separately to emphasize my view that the death penalty is unavailable for crimes committed during the window period between the declaration of the death penalty sentencing statute's unconstitutionality in *People v. Young*, 814 P.2d 834 (Colo.1991) and the re-enactment of the death penalty by the General Assembly. During that period, no valid death penalty sentencing statute was in effect.

On July 9, 1991, we declared section 16–11–103, 8A C.R.S. (1988 Supp.) (the "1988 statute") unconstitutional. At that point, there was no procedure for obtaining a death sentence under the 1988 statute. On September 20, 1991, the General Assembly repealed and reenacted the death penalty sentencing statute with amendments. § 16–11–103, 8A C.R.S. (1992 Supp.).

Individuals who committed crimes during the window period were on notice that no valid death penalty sentencing statute existed in Colorado. The defendants in this case, who allegedly committed first-degree murder on July 30, 1991, clearly fall within the window period. Under section 18–1–105(4), 8B C.R.S. (1992 Supp.), the only available penalty for individuals who committed class 1 felonies during the window period was life imprisonment.

This court previously addressed the applicability of the doctrine of revival and the ex post facto clause to section 16–11–801 and section 16–11–802 in *People v. District Court*, 834 P.2d 181 (Colo.1992). Those issues need not be revisited in this case.

Justice VOLLACK dissenting:

The majority concludes that the procedure governing imposition of sentences in class 1 felonies for crimes committed on or after July 1, 1988, and prior to September 20, 1991, set out in section 16–11–802, 8A C.R.S. (1992 Supp.), cannot be applied to the defendants in this case. I disagree, and would follow our decision in *People v. District Court*, 825 P.2d 1000 (Colo.1992) (hereinafter *Aguayo I*), wherein we stated that, by statute, House Bill 91S2–1038. applies to crimes committed between July 1, 1988, and September 20, 1991. *Aguayo I*, 825 P.2d at 1002. Additionally, I find that application of section 16–11–802 does not offend the test for ex post facto legislation recently adopted by this court in *People v. District Court*, 834 P.2d 181 (Colo.1992) (hereinafter *Thomas*). I dissent and would reverse the district court order.

I.

On August 8, 1991, Joseph Aguayo and Marvin Dennis, Jr. (the defendants), were charged by grand jury indictment with two counts of first degree murder, two counts of felony murder, two counts of aggravated robbery, and one count of conspiracy. The charges stemmed from events which resulted in the death of Rex Miller on July 30, 1991.

The defendants entered pleas of not guilty to the charges on August 23, 1991, and the district court then entered a scheduling order, setting a date for trial on November 18, 1991. The district court also ruled that October 4, 1991, was the deadline for filing motions. On October 8, 1991, the People of the State of Colorado (the People) filed notice of their intent to qualify the jury to impose a sentence of death pursuant to "C.R.S. 16–11–103 (1991 as amended)." That section sets forth the

---

1. *See* ch. 114, secs. 3, 5, § 16–11–103, 1988 Colo.  Sess.Laws 673, 675.

procedure for imposition of sentences in class 1 felony cases, and was reenacted in 1991 at section 16–11–103, 8A C.R.S. (1992 Supp.). The defendants, in response, filed a motion to deny the People's request. The defendants did not raise ex post facto concerns in their written motions.

On October 11, the trial court held a hearing on the People's notice of intent to death-qualify the jury. At the hearing, counsel for each defendant contended that application of the newly enacted statute raised ex post facto issues.[1] The People argued that section 18–1–105, 8B C.R.S. (1986), authorizing life imprisonment or penalty of death for class 1 felonies, had "been the law of the state throughout the entire time period." The People also argued that there were no retroactivity issues because the statute at issue was merely a procedural statute.[2]

Without considering the constitutionality of the statute, the district court found that the People were aware of the 1991 amendments to section 16–11–103 on October 4, 1991. The district court denied the People's request to death-qualify a jury because the People could have but did not reveal their intent prior to or on the deadline for filing motions.

The People filed a motion to reconsider that ruling in the district court, contending that by statute the sentencing procedures reenacted at section 16–11–802 applied to offenses committed on or after July 1, 1988 and prior to September 20, 1991.[3] The defendants separately filed responses to the People's motion to reconsider the ruling, contending that application of section 16–11–802 would violate the proscription against ex post facto laws.[4] The district court denied the People's motion to reconsider without providing a written opinion.

The People sought review of the district court's ruling in this court and we issued a rule to show cause why the People's requested relief should not be granted. The defendants incorporated their responses to the motion to reconsider (filed in district court) wherein they argued that, as applied to them, section 16–11–802 would violate the proscription against ex post facto legislation.[5]

Presented with ex post facto arguments, we observed that the issue before us was "whether the district court abused its discretion in denying the People the opportunity to seek the death penalty" in this case. *Aguayo I*, 825 P.2d at 1002. We observed that "[a]ny person sentenced for a class 1 felony on or after July 1, 1985 shall be punished by a minimum of life imprisonment and a maximum of death." *Id.* We did not limit our observation to exclude class 1 felonies committed on July 30, 1991, the date on which the defendants allegedly committed a class 1 felony. We conversely

1. Counsel for Aguayo contended that § 16–11–103, 8A C.R.S. (1992 Supp.), "is effective as of September 20 and it has nothing to do whatsoever with the state of the law on July 30, 1991, which is the applicable date of the alleged offense in this particular case." Counsel for Dennis joined in Aguayo's objection to qualify the jury for imposition of the penalty of death.

2. The People contended that "the question is whether a procedural statute which says how that can be enacted is that whether that is even an issue about retroactivity if it is merely a procedural statute."

3. The People relied on House Bill 91S2–1038, which was signed into law on October 11, 1991, the date on which the district court held its hearing in this case. House Bill 91S2–1038 makes the sentencing procedures enacted in § 16–11–802, 8A C.R.S. (1992 Supp.), "applicable to crimes committed after July 1, 1988 and prior to September 20, 1991." *Aguayo I*, 825

P.2d at 1002. The procedures enacted in § 16–11–802 are substantially similar to those enacted in § 16–11–103.

4. Aguayo contended that "House Bill 91S2–1038, which purportedly makes a death penalty applicable to acts which occurred prior to the enactment of the Bill, is facially in violation of the United States and Colorado Constitutions, particularly the guarantee against ex post facto laws."

5. Counsel for Aguayo argued to this court that
House Bill 91S2–1038, which purportedly makes a death penalty applicable to acts which occurred prior to the enactment of the Bill, is facially in violation of the United States and Colorado Constitutions, particularly the guarantee against ex post facto laws. U.S. Constitution Article I, §§ 9, 10; Colorado Constitution Article II, § 11.
Counsel presented this argument in a pleading that was made part of the record in *Aguayo I*.

stated that, "by statute, a person charged with first-degree murder is subject to the possibility of the death penalty." *Id.* We made absolute the rule to show cause. *Id.* at 1003.

The defendants subsequently filed motions to preclude application of the death penalty in March 1992, based on, among other things, constitutional proscriptions against ex post facto legislation. The district court held a hearing on the defendants' motions on March 26, 1992, and determined that section 16–11–802 was substantive and not procedural in nature. The district court identified the issue as whether "the defendants had notice of the non-existence of a valid death penalty statute." The district court found that this court's decision in *People v. Young*, 814 P.2d 834 (Colo.1991), supplied the defendants with constructive notice that no valid death penalty existed on July 30, 1991. Thus the district court concluded that application of the new statute to the defendants would result in application of ex post facto legislation.[6] The People now seek relief from this ruling.

The sole issue before this court is whether section 16–11–802 (hereinafter "the 1991 sentencing procedure") may be applied to the defendants in this case. A review of legislative history and of this court's recent decisions compels the conclusion that application of the 1991 sentencing procedure to the defendants does not transgress the constitutional proscription against ex post facto legislation.

## II.

### A.

### Legislative History

Colorado has, since 1861, condoned the punishment of death for persons convicted of certain crimes. *Thomas*, 834 P.2d at 185 (noting that there has been a death penalty in Colorado since 1861, with the exception of a brief interruption between 1897 and 1901); *People v. Davis*, 794 P.2d 159, 171 (Colo.1990) ("[T]hroughout the history of this state, capital punishment has been utilized as the penalty for certain crimes.... In short, the imposition of the death penalty has a long history of acceptance in Colorado."); *People v. Drake*, 748 P.2d 1237, 1263 (Colo.1988) (Rovira, J., concurring in part and dissenting in part) ("The citizens of Colorado, directly and through their elected representatives, have repeatedly declared their support of the death penalty."); *see* § 18–1–105, 8B C.R.S. (1986).[7]

In conformity with federal constitutional requirements, Colorado statutes have provided a bifurcated procedure for cases in which the death penalty is sought. *People v. District Court*, 196 Colo. 401, 405, 586 P.2d 31, 34 (1978). In such cases, the substantive question of an accused's guilt or innocence is tried in the first stage of the proceeding. *Id.* at 405, 586 P.2d at 34. Only in the event that an accused is convicted of a class 1 felony does "the same jury then hear[ ] evidence concerning the proper penalty" in the second stage of the proceeding. *Id.*

The second phase of the proceeding, "the penalty phase," has repeatedly been the subject of both judicial scrutiny and legislative evaluation, reflecting Colorado's struggle to implement a procedure permitting imposition of the penalty of death in conformity with both the state and federal constitutions. *See Thomas*, 834 P.2d at 185–203; *Young*, 814 P.2d 834; *People v. O'Neill*, 803 P.2d 164 (Colo.1990); *Davis*,

---

**6.** The district court limited its holding to an interpretation of the ex post facto clause of the Colorado Constitution.

**7.** Section 18–1–105(2)(b)(4), 8B C.R.S. (1986), has expressly provided:

A person who has been convicted of a class 1 felony shall be punished by life imprisonment unless the proceeding held to determine sentence according to the *procedure* set forth in section 16–11–103, C.R.S., results in a verdict which requires imposition of the death penalty....

(Emphasis added.) Section 16–11–103 has correspondingly provided the procedure for imposition of the penalty of death authorized by § 18–1–105.

As we noted in *Thomas*, 834 P.2d at 185, "Colorado has had a death penalty statute in effect since 1861, with the exception of a brief interruption between 1897 and 1901."

794 P.2d at 170–89; *People v. Tenneson,* 788 P.2d 786 (Colo.1990); *District Court,* 196 Colo. 401, 586 P.2d 31. This court has endeavored to ensure that the General Assembly create " 'objective standards to guide, regularize, and make rationally reviewable the process for imposing a death sentence' " within the penalty phase procedure. *District Court,* 196 Colo. at 405, 586 P.2d at 34 (quoting *Woodson v. North Carolina,* 428 U.S. 280, 96 S.Ct. 2978, 49 L.Ed.2d 944 (1976)).

To this end, we have recognized as constitutional a sentencing procedure consisting of four steps. *See Davis,* 794 P.2d at 170, 189. Found in section 16–11–103, 8A C.R.S. (1986), the four steps are as follows:

> First, the jury must determine if at least one of the statutory aggravating factors exists. If the jury does not unanimously agree that the prosecution has proven the existence of at least one statutory aggravator beyond a reasonable doubt, the defendant must be sentenced to life imprisonment. Second, if the jury has found that at least one statutory aggravating factor has been proven, the jury must then consider whether any mitigating factors exist. Third, the jury must determine whether "sufficient mitigating factors exist which outweigh any aggravating factor or factors found to exist." Fourth, and finally, if the jury finds that any mitigating factors do not outweigh the proven statutory aggravating factors, it must decide whether the defendant should be sentenced to death or life imprisonment.

*Young,* 814 P.2d at 840 (quoting *Tenneson,* 788 P.2d at 789 (citing § 16–11–103, 8A C.R.S. (1986))); *see* § 16–11–802, 8A C.R.S. (1992 Supp.).

In 1988, the General Assembly collapsed the four-step sentencing procedure into three steps. § 16–11–103, 8A C.R.S. (1988 Supp.) (hereinafter "the 1988 sentencing procedure"). This court, on July 9, 1991, determined that the 1988 sentencing procedure was facially unconstitutional because the three-step procedure permitted imposition of the penalty of death "when aggra-vators and mitigators weigh[ed] equally." *Young,* 814 P.2d at 846.

The General Assembly enacted several statutes in response to our determination in *Young.* On September 20, 1991, the General Assembly reenacted the four-step procedure for imposition of the penalty of death found in the 1986 statute. § 16–11–103, 8A C.R.S. (1992 Supp.) (expressly reenacting the 1986 statute). On October 11, 1991, the General Assembly enacted a second statute that "clearly stat[ed] its intent that 'there be no hiatus in the imposition of the death penalty as a sentence for the commission of a class 1 felony in the State of Colorado.' " *Thomas,* 834 P.2d at 187, quoting Act approved Oct. 11, 1991, ch. 6, sec. 1, §§ 16–11–801 and –802, 1991 Colo.2d Ex.Sess.Laws 16. The General Assembly accordingly enacted on October 11 a sentencing procedure to govern imposition of sentences in class 1 felony cases arising from July 1, 1988, to September 20, 1991. § 16–11–802, 8A C.R.S. (1992 Supp.).

It is the application of the most recent procedure—the 1991 sentencing procedure found in section 16–11–802—to the defendants in this case that must be scrutinized under the test for ex post facto legislation adopted by this court in *Thomas.*

### B.
### Ex post Facto Analysis

The majority concludes that the 1991 sentencing procedure may not be applied to the defendants in this case because the defendants, as a result of our decision in *Young,* had notice that "there was no valid death penalty sentencing statute in effect." Maj. op. at 339. The majority, however, disregards the gravamen of the ex post facto test announced in *Dobbert v. Florida,* 432 U.S. 282, 97 S.Ct. 2290, 53 L.Ed.2d 344 (1977), which distinguishes substantive from procedural legislation. Accordingly, the majority fails to evaluate the structure of the Colorado statutory scheme for imposition of sentences in class 1 felony cases against the requirements of *Dobbert.* Application of *Dobbert*'s ex post facto analysis reveals that the defendants in this case should be treated no differently than the

defendants in *Thomas* and its companion cases.

This court adopted the federal test for violations of proscriptions against ex post facto legislation first announced in *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 1 L.Ed. 648 (1798), and refined by the United States Supreme Court in *Dobbert. Thomas*, 834 P.2d at 193–94. As we stated in *Thomas*, an ex post facto law is

> "any statute which punishes as a crime an act previously committed, which was innocent when done; which makes more burdensome the punishment for a crime, after its commission, or which deprives one charged with crime of any defense available according to law at the time when the act was committed."

*Id.* at 195 (quoting *Dobbert*, 432 U.S. at 292, 97 S.Ct. at 2298). We also noted that "the *Dobbert* Court found that, to be ex post facto, a law must be more onerous than the prior law." *Id.* (citing *Dobbert*, 432 U.S. at 294, 97 S.Ct. at 2299). Lastly, we observed that the *Dobbert* Court's determination that there was no ex post facto violation rested in part on the fact that the defendant therein had "fair warning" of the possibility of the penalty of death. *Id.*

## C.
### The Substance Versus Procedure Distinction

The majority concludes, after cursory analysis, that "[a]pplying sections 16–11–801 and –802 retroactively so as to impose a death penalty would ... inflict a greater punishment than the law annexed to the crime when committed." Maj. op. at 339. In reaching this conclusion, the majority fails to employ the *Dobbert* test—which we adopted in *Thomas*—to the statutes revised and reenacted by the General Assembly.

The *Dobbert* Court recounted the fundamental principle underlying the proscription against ex post facto legislation: " '[t]he inhibition upon the passage of *ex post facto* laws does not give a criminal a right to be tried, in all respects, by the law in force when the crime charged was committed.' " *Dobbert*, 432 U.S. at 293, 97 S.Ct. at 2298 (quoting *Gibson v. Mississip-*

*pi*, 162 U.S. 565, 590, 16 S.Ct. 904, 910, 40 L.Ed. 1075 (1896)). Thus the Ex Post Facto Clause " 'secure[s] substantial personal rights against arbitrary and oppressive legislation, and [does not] limit the legislative control of remedies and modes of procedure which do not affect matters of substance.' " *Id.* (citation omitted) (quoting *Beazell v. Ohio*, 269 U.S. 167, 46 S.Ct. 68, 70 L.Ed. 216 (1925)). The *Dobbert* Court concluded that, while a law may work to an accused's disadvantage, "a procedural change is not *ex post facto.*" *Id.* This principle accords the seminal *Calder* test as only substantive legislation will create new crimes, increase punishments, or take away existing defenses. Procedural changes, by definition, do not implicate any of *Calder*'s three prongs and thus pose no ex post facto violation. *See Thomas*, 834 P.2d at 222 (Lohr, J., concurring in part and dissenting in part) (noting that the *Dobbert* Court held that changes in the law that are procedural do not violate the Ex Post Facto Clause).

When Dobbert was accused of killing his children, the Florida death penalty statute provided a procedure whereby a sentence of death was presumed unless the jury, after exercising unfettered discretion, recommended mercy. *Dobbert*, 432 U.S. at 294, 97 S.Ct. at 2299. Subsequent to the deaths of Dobbert's children, Florida's death penalty statute was judicially invalidated. In response, the Florida legislature enacted a new statute which created a substantially different procedure for determination of sentences. First, a defendant was allowed to present any relevant mitigating evidence. Secondly, the jury rendered an advisory opinion to the judge regarding its evaluation of the aggravating and mitigating factors. Lastly, the court was enabled to impose a sentence of death only after making a written determination that the aggravating factors outweigh the mitigating factors. *Id.* at 295, 97 S.Ct. at 2299.

Dobbert contended that the new statute's changes in the roles of the judge and jury in the imposition of the death sentence was an ex post facto violation as to him. *Id.* at

292, 97 S.Ct. at 2297. The *Dobbert* Court determined that "[t]he new statute simply altered the methods employed in determining whether the death penalty was to be imposed; *there was no change in the quantum of punishment attached to the crime." Id.* at 293–94, 97 S.Ct. at 2298 (emphasis added). The *Dobbert* Court concluded that "the changes in the law are procedural, and on the whole ameliorative" and thus posed no ex post facto violation. *Id.* at 292, 97 S.Ct. at 2298.[8]

The case before us is no different. Since at least 1963, the quantum of punishment attached to class 1 felonies has been defined as a minimum of life imprisonment and a maximum of death. § 18–1–105, 8B C.R.S. (1986 & 1992 Supp); § 40–2–3, 3 C.R.S. (1963). The *substantive* definition of the possible punishment has thus remained constant.

The 1991 sentencing procedure merely "altered the methods employed in determining whether the death penalty [is] to be imposed." *Dobbert,* 432 U.S. at 293–94, 97 S.Ct. at 2298. Most notably, the 1991 sentencing procedure was reenacted to require the jury to employ a four-step procedure where the 1988 sentencing procedure had required only three steps. § 16–11–802, 8A C.R.S. (1992 Supp.); 16–11–103, 8A C.R.S. (1988 Supp.). In *Thomas,* we examined the 1991 sentencing procedure "as a whole," and found that the fourth step "obviously benefits a defendant." *Thomas,* 834 P.2d at 201–02. In other words, by not revising section 18–1–105, the General Assembly never created new crimes, increased punishments for existing offenses, or removed existing defenses. By revising and reenacting sections 16–11–103 and 16–11–802, the General Assembly only altered the procedure by which authorized sentences are determined in class 1 felony cases. As such, the *Dobbert* test dictates that the prohibition against ex post facto legislation is not violated by application of the 1991 class 1 felony sentencing procedure to the defendants in this case.

The majority averts this mandated conclusion by reasoning that section 18–1–105 mandates that, in the absence of sentencing procedures, the only penalty for a class 1 felony is life imprisonment. Maj. op. at 339. Were I to adopt the majority's reasoning I would find it incumbent on this court to reverse our decision in *Thomas.* We held in *Thomas* and its companion case[9] that the 1991 sentencing procedure could be applied retroactively to the defendants therein. *Thomas,* 834 P.2d at 202. Such a holding is necessarily premised on a determination that the changes to the 1991 sentencing procedure were not substantive and did not create a crime, increase a punishment, or remove an existing defense. Otherwise, retroactive application of the 1991 sentencing procedure would be impermissible.

In the present case, however, the majority reasons that the 1991 sentencing procedure offends the substantive prong of the ex post facto test which forbids application of legislation "which makes more burdensome the punishment for a crime, after its commission." *Thomas,* 834 P.2d at 195 (quoting *Dobbert,* 432 U.S. at 292, 97 S.Ct. at 2298). The majority premises this conclusion on the fact that there was no presumptively constitutional procedure in existence when the defendants in this case allegedly committed offenses. The ex post facto test articulated in *Calder* and refined in *Dobbert* does not turn on whether there is a presumptively constitutional procedure in place on the date of a charged offense. The test separately treats those changes which affect procedure from those which affect substance, or the quantum of punishment. Where a statutory change affects a mode of procedure, retroactive application is tolerated; where a change affects substance, it is not. Thus, the majori-

---

8. The Supreme Court noted that procedural changes need not be ameliorative to avoid offending the ex post facto prohibition. *Dobbert v. Florida,* 432 U.S. 282, 292 n. 6, 97 S.Ct. 2290, 2298 n. 6, 53 L.Ed.2d 344 (1977). Rather, the Supreme Court emphasized that ex post facto violations occur when a law is more onerous than its predecessor. *Id.* at 294, 97 S.Ct. at 2299.

9. *People v. District Court,* 834 P.2d 236 (Colo. 1992).

ty's reasoning, if carried to a logical conclusion, requires us to overrule *Thomas*.

I am not, however, persuaded by the majority's reasoning and thus do not find cause to overrule *Thomas*. To the contrary, I find that application of the 1991 sentencing procedure to the defendants in this case no more increases the substantive punishment available than application of the 1991 sentencing procedure to the defendants in *Thomas*.

## D.
### The Notice Requirement

The majority states that "at the time of the alleged offenses section 18–1–105 gave notice that the death penalty would not be imposed for class 1 felonies." Maj. op. at 339. The majority's conclusion does not square with the notice requirement expounded in *Dobbert*.

Dobbert contended "that at the time he murdered his children, there was no death penalty 'in effect' in Florida." *Dobbert*, 432 U.S. at 297, 97 S.Ct. at 2300. Dobbert based this contention on the fact that the statute in place when he killed his children was subsequently invalidated. The *Dobbert* Court stated that "this sophistic argument mocks the substance of the *Ex Post Facto* Clause.... The statute was intended to provide maximum deterrence, and its existence on the statute books provided *fair warning as to the degree of culpability which the State ascribed to the act of murder.*" *Id.* (emphasis added). The Supreme Court rejected Dobbert's "highly technical" argument and concluded that,

while Dobbert could not be sentenced under the statute in place at the time he killed his children, its existence warned Dobbert of the penalty the state would seek if Dobbert were convicted of first degree murder. *Id.*

Compliance with the constitutional proscription against ex post facto legislation under *Dobbert* thus requires that the defendant have notice of the penalty a state may seek to impose if the defendant is convicted of a class 1 felony. *Id.* at 298, 97 S.Ct. at 2300. The notice analysis in *Dobbert* did not turn on whether a procedural statute governing imposition of the penalty existed at the time Dobbert committed the alleged offense.[10]

In *Thomas*, we were satisfied that imposition of the penalty of death was tolerable because the defendant had "fair warning of the possibility for the death penalty" because a presumptively constitutional procedure for imposition of the penalty of death was in existence in February 1991 when the defendant therein committed a class 1 felony. *Thomas*, 834 P.2d at 202. The notice inquiry developed in *Dobbert* does not require, however, that a constitutionally infirm statute be the source of the operative fact that provides warning to the defendants.

Under the *Dobbert* rubric, the notice requirement is satisfied in the present case by the existence of section 18–1–105, which informed the defendants of the penalty that the State of Colorado would seek to impose if the defendants were convicted of

---

**10.** A fair reading of *Dobbert* does not clearly reveal whether notice is in fact a part of the ex post facto inquiry. Notice was not a part of the *Calder* Court's determination of what constituted an ex post facto law.

*Calder* was a civil case wherein the Connecticut legislature enacted a measure that ordered a new hearing in a will contest dispute. *Calder*, 3 U.S. (3 Dall.) at 386. Justice Chase did not look to what law was "annexed to the crime" in *Calder* and did not ascertain whether the parties to the will dispute had notice of the legislature's actions. We stated, in *Thomas*, that *"Dobbert* refined the historic Calder test for an ex post facto law." *Thomas*, 834 P.2d at 198. This court relied on *Dobbert*'s concept of notice in *Thomas;* stare decisis demands that we do so

here. I am thus constrained to apply the law that we followed in *Thomas*.

The notice analysis in *Dobbert* turned on Dobbert's argument that the Florida statute in place when the offenses took place was *void ab initio*. *Dobbert*, 432 U.S. at 297, 97 S.Ct. at 2300. The *Dobbert* Court responded that the statute, though later determined to be unconstitutional, existed to "serve[ ] as an 'operative fact' to warn the petitioner of the penalty." *Id.* at 298, 97 S.Ct. at 2300. In other words, the *Dobbert* Court noted that the presumptively valid statute may have consequences. It did not, however, affirmatively state that, where the quantum of punishment has remained unchanged, a defendant need have actual notice of it.

class 1 felonies.[11] *Dobbert*, 432 U.S. at 298, 97 S.Ct. at 2300. This statute provides, as is required by *Dobbert*, fair warning of the degree of culpability that Colorado has ascribed to class 1 felonies at least since 1963. *Thomas*, 834 P.2d at 202.

Contrary to the majority's abbreviated analysis and conclusion, I conclude that application of the 1991 sentencing procedure does not violate the test for ex post facto legislation as defined in *Dobbert* and applied by this court in *Thomas*. This conclusion is directed not only by the foregoing analysis, but also by this court's opinion in *Aguayo I*, 825 P.2d 1000 (Colo.1992).

## III.

The People filed an original proceeding in this court after the district court denied their motion to qualify the jury to impose a sentence of death. *Aguayo I*, 825 P.2d 1000–01 (Colo.1992). In the first original proceeding, we were cognizant of the ex post facto issues raised in this case.[12] We stated in *Aguayo I* that both defendants contended that the statute was not retroactive and did not apply to their case. *Id.* at 1002. We ultimately concluded that it did. *Id.* at 1003.

In *Aguayo I*, the People argued to the district court that on October 11, 1991, section 16–11–801 became law and "demonstrated that the General Assembly clearly intended to have operative death penalty procedures at the time the offenses in this case were committed." *Id.* at 1002. After noting that the trial court denied the People's motion to reconsider its ruling that a jury could not be death-qualified, we articulated the issue before us as "*whether the district court abused its discretion in denying the People the opportunity to seek*

the death penalty under the circumstances here." *Id.* (emphasis added).

In resolving the issue, we observed that the General Assembly clearly indicated its intent that there be no hiatus in imposition of the penalty of death in the state of Colorado. *Id.* We unanimously stated:

> Any person sentenced for a class 1 felony on or after July 1, 1985 shall be punished by a minimum of life imprisonment and a maximum of death. § 18–1–105(1)(a)(IV), 8B C.R.S. (1986 & 1991 Supp.). First-degree murder is a class 1 felony. § 18–3–102, 8B C.R.S. (1986). Therefore, by statute, a person charged with first-degree murder *is subject to the possibility of the death penalty.*

*Id.* (emphasis added). We subsequently stated:

> It is ... relevant that at the time of these events the state of the law concerning the applicability of the death penalty was unsettled. This fact may have affected the prosecution in arriving at a decision to seek that sanction and in not informing the court and the defendants of its decision at an earlier stage of the proceedings.

*Id.* at 1003. We found that the jury could be qualified for a death penalty case. We did not reserve any issues for future consideration other than what the consequences may be if the People refuse to provide notice of intent to death-qualify a jury upon specific request. *Id.* at 1003 n. 4.

We concluded in *Aguayo I* that a person charged with first degree murder is subject to the possibility of the death penalty. *Id.* at 1002. In *Thomas*, we exhaustively scrutinized the 1991 sentencing procedure against the requirements of *Dobbert*'s ex post facto test and determined that there

11. I am persuaded, as was Justice Lohr in his dissenting and concurring opinion to *Thomas*, by the opinion of Justice Stevens who stated that "application of the ... 'fair warning' rationale would lead to ... manifestly intolerable results." *Thomas*, 834 P.2d at 221 (Lohr, J., concurring and dissenting) (quoting *Dobbert*, 432 U.S. at 309–10, 97 S.Ct. at 2306–07). The concept of "fair warning" or notice may not be useful in ex post facto analysis.

If defendants are to be charged with notice, however, then defendants should be charged with notice that the law of procedure applies as it exists at the time of trial, or that the 1986 sentencing procedure may have been revived. Defendants may also be charged with notice that the State of Colorado has condoned imposition of the penalty of death since 1861. *See Thomas*, 834 P.2d at 185.

12. *See supra* note 5.

was no constitutional violation. The only distinction between *Thomas* and the present case is the manner in which the defendants may have had notice of "the degree of culpability which the [General Assembly] ascribed to the act of murder." *Dobbert*, 432 U.S. at 297, 97 S.Ct. at 2300. We have previously concluded that, by statute, the defendants were charged with the possibility of the death penalty. I perceive no just basis on which to distinguish this case from *Thomas*, where both cases are in "sufficient compliance" with the ex post facto clause. *Thomas*, 834 P.2d at 202. I dissent, and would reverse the district court order.