**The PEOPLE of the State of Colorado, Plaintiff-Appellee,**

v.

**Timothy R. STEAD, Defendant-Appellant.**

**No. 92SA227.**

Supreme Court of Colorado, En Banc.

Feb. 8, 1993.

Rehearing Denied March 8, 1993.

Gale A. Norton, Atty. Gen., Raymond T. Slaughter, Chief Deputy Atty. Gen., Timothy M. Tymkovich, Sol. Gen., John Daniel Dailey, Deputy Atty. Gen., Robert Mark Russel, First Asst. Atty. Gen., Roger G. Billotte, Asst. Atty. Gen., Criminal Enforcement Section, Denver, for plaintiff-appellee.

David F. Vela, Colorado State Public Defender, Robin Desmond, Katherine Brien, Deputy State Public Defenders, Denver, for defendant-appellant.

Justice VOLLACK delivered the Opinion of the Court.

Appellant Timothy Richard Stead (Stead) appeals from a district court order in *People v. Stead*, No. 91CR0897, wherein the district court ruled that application of a drug offender surcharge set forth in section 18–19–103, 8B C.R.S. (1992 Supp.), does not violate the proscription against ex post facto laws. We disagree and reverse the district court order.

### I.

On August 22, 1990, several police officers executed a search warrant for Stead's residence. The officers seized several containers of marijuana, several plastic bags containing psilocybin mushrooms, and several items of drug paraphernalia. A charging document was filed in county court on November 14, 1990, charging Stead with possession of a controlled substance in violation of section 12–22–309, 5A C.R.S. (1991), and section 18–18–105, 8B C.R.S. (1986); possession of marijuana in violation of section 18–18–108, 8B C.R.S. (1986); and possession of drug paraphernalia in violation of section 12–22–504 5A C.R.S. (1991). On February 26, 1991, the county court issued a warrant for Stead's arrest, and Stead was subsequently arrested on March 16, 1991. On August 12, 1991, Stead entered a plea of guilty to possession of marijuana with intent to distribute in violation of section 18–18–106, and, as a result of the plea agreement, the three remaining charges against Stead were dismissed.

On October 21, 1991, the district court sentenced Stead to three years probation and forty-eight hours of public service. The district court ordered Stead to pay $100 to the victim compensation fund, $100 to the victim assistance fund, $30 court costs, $20 per month for supervision fees, $10 for intake urinalysis, and $50 to the useful public service fund. The district court additionally ordered Stead to pay $1,000 to the drug offender surcharge fund. Stead subsequently filed a motion contending that imposition of the $1,000 surcharge pursuant to section 18–19–103, and imposition of forty-eight hours of public service, violated the proscription against ex post facto laws. The district court ruled

that the $1,000 surcharge was a cost, not a penalty, and thus did not violate the prohibition against ex post facto laws. The district court did conclude that the useful public service was an increase in penalty, and accordingly vacated that portion of the order. Stead subsequently filed an appeal in this court pursuant to C.A.R. 3.

## II.

Stead contends that the district court's order requiring him to pay $1,000 to the drug offender surcharge fund pursuant to section 18–19–103, 8B C.R.S. (1992 Supp.), violates the constitutional proscription against ex post facto laws. We agree.

## A.

Section 18–19–103 was enacted as part of an act "concerning the elimination of substance abuse in the criminal justice system." Act approved May 29, 1991, ch. 82, 1991 Colo.Sess.Laws 436–47. In Article 11.5 of the act, the General Assembly declared:

> Substance abuse is a significant factor in the commission of crimes and it is a significant factor in impeding the rehabilitation of persons convicted of crimes which results in an increased rate of recidivism. Therefore, the general assembly hereby resolves to curtail the disastrous effects of substance abuse in the criminal justice system by providing for consistency in the response to substance abuse throughout the criminal justice system and to improve and standardize substance abuse treatment for offenders at each stage of the criminal justice system and to provide punitive

measures for offenders who refuse to cooperate with and respond to substance abuse treatment while such offenders are involved with the criminal justice system.

§ 16–11.5–101, 8A C.R.S. (1992 Supp.). Article 11.5 accordingly calls for the development of a standardized procedure for assessing use of controlled substances by offenders, and a system of programs for education and treatment related to substance abuse by offenders. § 16–11.5–102, 8A C.R.S. (1992 Supp.).

Article 19 of the act creates a drug offender surcharge fund in order to implement plans developed pursuant to section 16–11.5–102(3), 8A C.R.S. (1992 Supp.), by covering the costs associated with substance abuse assessment, testing, education, and treatment in Colorado. § 18–19–103(4), 8B C.R.S. (1992 Supp.).[1] The drug offender surcharge fund is designed to consist solely of surcharges levied upon "drug offenders."[2] § 18–19–103, 8B C.R.S. (1992 Supp.).

Section 18–19–103(1) thus provides:

> On and after July 1, 1991, each drug offender who is convicted, or receives a deferred sentence pursuant to section 16–7–403, C.R.S., shall be required to pay a surcharge to the clerk of the court in the county in which the conviction occurs or in which the deferred sentence is entered.

§ 18–19–103(1), 8B C.R.S. (1992 Supp.). Clerks collecting surcharges are required to disburse ninety percent of moneys collected to the state treasurer, who in turn must deposit collected surcharges into the drug offender surcharge fund. § 18–19–103(3)(d), 8B C.R.S. (1992 Supp.). We must

**1.** This section provides in pertinent part:
There is hereby created in the state treasury a drug offender surcharge fund which shall consist of moneys received by the state treasurer pursuant to paragraph (d) of subsection (3) of this section.... All moneys in the fund shall be subject to annual appropriation by the general assembly to the judicial department, the department of corrections, the division of criminal justice of the department of public safety, and the department of health,

after consideration of the plan developed pursuant to section 16–11.5–102(3), C.R.S., to cover the costs associated with substance abuse assessment, testing, education, and treatment. § 18–19–103(4), 8B C.R.S. (1992 Supp.).

**2.** "Drug offender" is defined as any person convicted of an offense under article 18 of the criminal code. § 18–19–102(2), 8B C.R.S. (1992 Supp.).

determine whether constitutional proscriptions against ex post facto laws bar application of section 18–19–103 to Stead.

### B.

■ Article I, section 10, of the United States Constitution and article II, section 11, of the Colorado Constitution prohibit the General Assembly from enacting ex post facto legislation. We have stated that "the ex post facto clause is violated when a statute punishes as a crime conduct which was innocent when done, makes more onerous the punishment for a crime after its commission, or deprives a defendant of a defense that was available at the time the crime was committed." *People v. Aguayo*, 840 P.2d 336, 338–39 (Colo.1992) (quoting *People v. District Court (Thomas)*, 834 P.2d 181, 199 (Colo.1992)).

In *People v. District Court (Thomas)*, 834 P.2d 181 (Colo.1992), we followed "our past decisions in which we agreed with the United States Supreme Court's seminal definition of an ex post facto law." *Id.* at 194. We thus noted that "the historic *Calder* test defines as ex post facto '[e]very law that *changes the punishment*, than the law annexed to the crime, when committed.'" *Id.* at 198 (quoting *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798)); *see Aue v. Diesslin*, 798 P.2d 436, 438 (1990) (following the *Calder* definition of an ex post facto law). While examining ex post facto challenges to legislation, we have been mindful of the purpose of ex post facto proscriptions: "to secure substantial personal rights against arbitrary and oppressive legislation." *Dobbert v. Florida*, 432 U.S. 282, 293, 97 S.Ct. 2290, 2298, 53 L.Ed.2d 344 (1977) (quoting *Malloy v. South Carolina*, 237 U.S. 180, 183,

35 S.Ct. 507, 508, 59 L.Ed. 905 (1915)); *see Thomas*, 834 P.2d at 195–96 (discussing *Dobbert*, 432 U.S. 282, 97 S.Ct. 2290).

Applying these principles, we found in *Aguayo* that at the time defendants therein "committed [the] class 1 felony offenses[,] there was no valid death penalty sentencing statute in effect." *Aguayo*, 840 P.2d at 339. We concluded that a subsequently enacted death penalty statute could not be retroactively applied to the defendants because it would "inflict a greater punishment than the law annexed to the crime when committed." *Id.* We reached this conclusion despite an express legislative declaration that the subsequently enacted statute governed the period of time in which the defendants committed the charged offense. *Id.* at 337 n. 2, 337–39. These principles dictate that section 18–19–103 cannot be applied to Stead without offending the constitutional proscriptions against ex post facto legislation.[3] Stead committed offenses on August 22, 1990. The drug offender surcharge statute was not annexed to the charged offenses on that date; accordingly, retroactive application of the statute to Stead makes more onerous the punishment for Stead's crime after its commission, in contravention of the prohibitions against ex post facto laws. *See Aguayo*, 840 P.2d at 339; *Thomas*, 832 P.2d at 199.

### C.

■ The People contend that the surcharge is not a punishment, but rather a nonpunitive, compensatory payment assessed against convicted drug offenders. The People argue that there is no deterrent or retributive purpose to the surcharge.[4] The People's contentions are not persuasive.

---

**3.** Stead additionally contends that § 18–19–103 violates due process and equal protection of the law. Since we conclude that application of the section offends the constitutional prohibitions against ex post facto legislation, we do not address these contentions.

**4.** The People rely on *United States v. Halper*, 490 U.S. 435, 109 S.Ct. 1892, 104 L.Ed.2d 487 (1989), in support of their argument. Halper was con-

victed of sixty-five counts of violating the criminal false-claims statute, and sixteen counts of mail fraud. *Halper*, 490 U.S. at 437, 109 S.Ct. at 1896. Halper was sentenced to two years imprisonment and fined $5,000. *Id.* The Government sought an additional $130,000 civil penalty, which the district court concluded could not be imposed because it would violate the Double Jeopardy Clause. *Id.* at 438–39, 109 S.Ct. at 1896–97.

A punishment is defined as "[a]ny fine, penalty, or confinement inflicted upon a person by the authority of the law ... for some crime or offense committed by him." *Black's Law Dictionary* 1234 (6th ed. 1990); *People v. Vanderpool*, 20 Cal.2d 746, 128 P.2d 513, 515 (1942). The surcharge at issue is part of Colorado's criminal code; it is only available as a sanction after an individual has been convicted of, or entered a plea of guilty to, a drug-related offense specified in the criminal code. § 18–19–103(1), 8B C.R.S. (1992 Supp.). The amount of the fine imposed is correlated to the degree of felony committed; for example, a person convicted of a class 6 felony is required to pay a fine of $500 dollars, while a person convicted of a class 4 felony is required to pay a fine of $1,000, while a person convicted of a class 2 felony is required to pay a fine of $3,000. § 18–19–103(1).

Additionally, ninety percent of all moneys collected are directed, by statute, to be deposited in a fund which in turn finances a system of programs for education and treatment of substance abuse by offenders. § 16–11.5–102(1)(b), –102(2), 8B C.R.S. (1992 Supp.). The programs are required by statute to "provide a continuum of education and treatment ... for each offender as he proceeds through the criminal justice system, and may include ... self-help groups, group counseling, individual counseling, outpatient treatment, inpatient treatment, day care, or treatment in a therapeutic community." § 16–11.5–102(1)(b). The surcharge thus directly serves the purposes of prevention and rehabilitation. *See* Wayne LaFave & Austin Scott, *Substantive Criminal Law* § 1.5, 31–36 (1986) (stating that prevention aims to deter the

criminal himself from committing further crimes, and rehabilitation serves to return a convicted criminal to society after giving him appropriate treatment).

The legislative scheme thus reveals that the surcharge is properly characterized as a punishment imposed only on persons convicted of drug-related offenses, in part to finance treatment programs designed to rehabilitate those convicted persons. *See In re Petition of the State of Delaware*, 603 A.2d 814, 816–18 (Del.1992) (applying the *Calder* test and concluding that an increase in a penalty activated only by a criminal conviction violated the ex post facto clause of the state constitution). As such, the surcharge is appropriately scrutinized against the constitutional provisions prohibiting ex post facto legislation.

### III.

We reverse the district court order and remand the case for proceedings consistent with this opinion.

---

The Supreme Court concluded that Halper's liability in the amount of $130,000 under the civil penalty was sufficiently disproportionate to the Government's costs in the amount of $585, that "the sanction constitutes a second punishment in violation of double jeopardy." *Id.* at 452, 109 S.Ct. at 1904.

We note that at least one state supreme court has declined to follow *Halper* when concluding that an increase in a penalty violated ex post

facto proscriptions. *In re Petition of the State of Delaware*, 603 A.2d 814, 817 (Del.1992). The Delaware Supreme Court declined to follow *Halper* on the ground that the government could have sought the civil penalty without pursuing criminal sanctions, whereas the penalty involved in the case at bar was only activated by a criminal conviction, and was thus part of the law annexed to the crime. *Id.* at 817–18.